Judgment reversed and <i>procedendo</i> awarded.

# Hays *et al. versus* The Commonwealth *ex rel.* McCutcheon.

1. Sect. 4, article 16, of the new constitution, which provides that, " In all elections for directors or managers of a corporation, each member or shareholder may cast the whole number of his votes for one candidate, or distribute them upon two or more candidates as he may prefer," does not apply to a corporation that existed prior to the adoption of the new constitution, that has not since accepted the benefits of any legislation under said constitution, and whose charter contained the following provision, " at all general meetings or elections by the stockholders, each share of stock shall entitle the holder thereof to one vote."

2. *It seems* that charters of private corporations are left exactly as the new constitution found them, and so must remain until the companies holding them shall enter into a new contract with the state, by accepting the benefit of some future legislation.

3. The system of cumulative voting discussed.

October 31st 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1876, No. 197.

This was an application by the Commonwealth, on the relation of J. C. McCutcheon, for a quo warranto, requiring M. D. Hays and others to show by what warrant they exercised the offices of President and Directors of the Pittsburgh and Castle Shannon Railroad Company, and excluded the relator from the office of director.

The railroad company was incorporated September 21st 1871,

[Hays v. Commonwealth.]

under the provisions of the Act of 4th of April 1868 (Pamph. L. 62), and a special act approved the 21st of April 1872. On the 15th of February 1876, a president and board of directors were elected. It appeared that at this election some of the stockholders claimed the right to cast the whole number of their votes for one candidate, or to distribute them upon two or more, conformably to the following provision of section 4, article 16, of the new constitution: " In all elections for directors or managers of a corporation, each member or shareholder may cast the whole number of his votes for one candidate, or distribute them upon two or more candidates, as he may prefer."

At this election one of the candidates for director was the relator, who alleged that he had received 5188 single votes, each representing one share of stock, and 19,359 votes cast upon the cumulative system provided for in the above section of the constitution, and that James McQuiston, voted for at the same time, and who was returned elected, had only received 6660 votes, of which 500 were cast for him upon the cumulative system, and 6163 by single votes, one for each share of stock, and claiming therefore that the relator was elected. McQuiston, it appeared, had received the smallest number of votes of those declared elected.

Upon a petition setting forth the foregoing facts, the quo warranto issued, and the respondents in their answer averred that at said election no votes cast upon the cumulative plan had been received by the tellers, although some had been offered; that the election was conducted under the following provision of the charter of the company: " At all general meetings or elections by the stockholders, each share of stock shall entitle the holder thereof to one vote, and each ballot shall have endorsed thereon the number of shares thereby represented;" that the election on the 15th of February was a general election and regulated by said provision; that the corporation was in existence prior to the adoption of the new constitution, and had not in any way accepted the benefits of said constitution, or received or accepted the benefits of any legislation by a general or special law since its adoption, nor has the legislature in any manner changed the provisions of its charter, and that therefore section 4 of article 16 of said constitution did not apply to said corporation, or authorize any stockholder to vote otherwise than provided for in the above-mentioned provision of the charter.

To this answer the Commonwealth demurred, and after argument the court entered judgment upon the demurrer, ousting McQuiston and declaring McCutcheon duly elected a director of the company.

This action of the court was assigned for error.

D. T. Watson, for plaintiffs in error.—A statute should be interpreted to operate prospectively only unless the language is so clear as to preclude all question as to the intention of the legislature:

[Hays *v.* Commonwealth.]

Taylor *v.* Mitchell, 7 P. F. Smith 209, and cases cited. The constitution is construed by the same rule. Sect. 4, art. 16, of the new constitution clearly has no express words making it retroactive, and there is certainly no necessary implication that it is meant to be retroactive. Nor does the context favor this view. Sect. 2 says : " The General Assembly shall not remit the forfeiture of the charter of any corporation now existing, or alter or amend the same, or pass any other general or special law for the benefit of such corporation, except upon condition that such corporation shall thereafter hold its charter subject to the provisions of the constitution." Why was this section inserted if the constitution, *proprio vigore*, applied to and governed corporations already in existence ? Sect. 10 of article 16 provides, " No railroad, canal or other transportation company in existence at the time of the adoption of this article shall have the benefit of any future legislation by general or special laws, except upon condition of complete acceptance of all the provisions of this article." Why this section, if, *ipso facto*, on the adoption of the constitution it applied to pre-existing corporations? Sect. 2 of the schedule is : " All laws in force in this Commonwealth at the adoption of this constitution not inconsistent therewith, and all rights, actions, prosecutions and contracts shall continue as if this constitution had not been adopted."

That the grant of the charter by the state to the Castle Shannon Company, for which the company paid a bonus and tax, as set forth in the answer, is a contract, no one since the Dartmouth College case will attempt to deny : Trustees of Dartmouth College *v.* Woodward, 4 Wheat. 518. This state has recognised and approved that doctrine: Dugan *v.* Bridge Co., 3 Casey 303 ; Iron City Bank *v.* Pittsburgh, 1 Wright 340.

The amendment of 1857 to the old constitution provides that " the legislature shall have power to alter, revoke or annul any charter of incorporation hereafter conferred by or under any special or general law, whenever in their opinion it may be injurious to the citizens of the Commonwealth; in such manner, however, that no injustice shall be done to the corporators." It is only then the legislature of the state with whom the power is lodged to " alter, revoke or annul" charters, and it can only be exercised in such shape as to do the corporators no injustice. Here every stockholder bought on the faith of one share of stock having one vote. A. purchases more than one-half the stock, and therefore controls the company. What right, with no provisions for his indemnity, have the people to give the minority power to change the result?

*A. M. Brown*, for defendant in error, referred to Commonwealth *ex rel.* C. Donnelly *et al. v.* Lintsman *et al.*, 23 Pittsburgh Legal Jour., March 22d 1876, 122, wherein Sterrett, P. J., ably discussed

[*Hays v. Commonwealth.*]

and determined the question presented in this case. The debates of the constitutional convention show that section 4, article 16, was intended and understood to embrace all corporations, both old and new. An Act of Assembly which operates merely upon the remedy, and not upon the right, is not unconstitutional. Therefore the legislature may pass retrospective laws, such as in their operation may affect suits pending, and give to a party a remedy which he did not previously possess, or modify an existing remedy or remove an impediment in the way of legal proceedings : Schenley v. Commonwealth, 12 Casey 29 ; Marshall v. Allegheny City, 9 P. F Smith 455–462 ; Cooley on Constitutional Limitations 361. Any rule or regulation in regard to the remedy which does not, under pretence of modifying or regulating it, take away or impair the right itself, cannot be regarded as beyond the proper province of legislation : Id. 362.

The constitutional provision under consideration is a mere regulation of the right of suffrage in its application to the government of corporations, and mainly intended, as constitutional provisions generally are, for the protection of minorities. It deprives no one of a vested right, but grants to each and all equal privileges and equal rights as to the mode of voting. It gives the stockholders of corporations the right to vote just as many shares as they voted before the adoption of the new constitution, by the terms of their several acts of incorporation, reserving the power to cumulate as is provided for in this section.

Mr. Justice GORDON delivered the opinion of the court, January 2d 1877.

But a single question is presented for our consideration. Does section 4, article 16, of our new constitution apply to the corporation known as the Pittsburgh and Castle Shannon Railroad Company ? That section reads thus : " In all elections for directors or managers of a corporation each member or shareholder may cast the whole number of his votes for one candidate, or distribute them upon two or more candidates, as he may prefer." This section is understood to confer upon the individual stockholder the right to cast all the votes which his stock represents, multiplied by the number of directors or managers to be elected, for a single candidate, should he think proper so to do. Though from this section, as originally proposed, words nearly similar to those we have used, were stricken out, yet we have no doubt we have in our statement embodied the intention of the convention. If, indeed, we do not, in this manner, reach the meaning of this part of the constitution, it has none ; for it would be a vain thing to propose to confer a power upon members of a corporation which they already possessed. Adopting this interpretation as the true one, and we must concede that the intent was to work a radical change in the method of con-

[Hays *v.* Commonwealth.]

ducting corporate elections. The importance of this innovation is not to be underrated in the face of the very significant fact that it was thought worthy of a place in the supreme law of the state, and thus placed beyond the power of legislative interference. Applying this rule to the Pittsburgh and Castle Shannon Railroad Company, let us observe its effect. This company was incorporated on the 21st of September 1871, in accordance with the provisions of the Act of April 4th 1868 (Pamph. L. 62); among other provisions of its charter is this one: "At all general meetings or elections by the stockholders, each share of stock shall entitle the holder thereof to one vote." Of course this means one vote for each officer to be elected, as it means one vote on each resolution that may be proposed at any general meeting. Thus, a stockholder, owning one share, would have one vote for each of the ten directors. If, however, we annul this provision of the charter, and substitute the constitutional provision above referred to, this shareholder will have ten votes for any one of the ten candidates for the office of manager, whom he may choose to select, or five for each of any two he may so choose. Thus, those holding a minority of the shares of the stock of this corporation would be enabled to do what under the charter is impossible, to wit, to elect, in spite of the majority, one or more of the managing officers. Now, whilst it cannot be said that this would not be an alteration in the terms of this charter, it is nevertheless urged that it is a mere regulation of the right of suffrage in corporations, but affects the vested rights of no one. But if it be not a vested right in those who own the major part of the stock of the corporation, to elect, if they see proper, every member of the board of directors, then I would like to know what a vested right means. This was part of the contract under which they entered into the company, and for which they paid their money. The compact was, that they should have the power to select those who should have the management and control of the funds which they adventured in this enterprise. If, indeed, it be admitted that the minority in a board of directors amounts to nothing, the above stated proposition would be admissible, but we cannot seriously entertain such an idea, for it was just because such a minority does amount to something, and because it often can control, or modify, the acts of a majority, that the introduction of the constitutional provision under discussion was thought necessary. The framers of this part of our constitution were no neophytes in legal science, but masters and teachers, who well knew what they were about, and that they intended to introduce a radical change in the law governing corporations is not doubtful. But when we have come to this conclusion we have reached the turning point of this case, for if the charter method of voting be a material part of the organic law of the company, it follows, that the constitutional convention, even had it so intended, could not alter that method. In

the case of the Iron City Bank v. Pittsburgh, 1 Wright 340, this matter is carefully considered in an elaborate opinion by Justice WOODWARD, in which, after citing the case of the Trustees of Dartmouth College, 4 Wheat. 518, wherein it was held that the royal charter granted to the trustees of that college before the revolution, was a contract within the meaning of the Constitution of the United States, and that an act of the legislature of New Hampshire altering the charter, without the consent of the corporation, was an act impairing the obligation of a contract, and therefore unconstitutional and void, he says, that this decision, though often questioned, has been generally followed, and that the doctrine therein stated may now be regarded as the settled rule of law of every state in the union.

This authority is supported by the cases of the Bank of Pennsylvania v. The Commonwealth, 7 Harris 144, and the Commonwealth v. The Pittsburgh and Connellsville Railroad Co., 8 P. F. Smith 26. So we may take it as settled that the charter of a company is such a contract as cannot be impeached by state authority, except for proper cause shown. It is said, however, that by the amendment of 1857 the legislature has the power to alter or revoke the charter of this corporation. Be it so; it may be an answer to say, that a constitutional convention is not the legislature in the meaning of that amendment. If, however, it were such it could only make such alteration or revocation when it was made to appear that the charter in the part proposed to be revoked or altered was "*injurious to the citizens of the Commonwealth;*" for the legislature cannot act arbitrarily in a matter of this kind, and impose its own will as the *ultima ratio*. In the case last above cited, Mr. Justice SHARSWOOD sets it down as a rule settled not only by judicial but legislative authority that the legislature is not the final judge of whether the *casus fœderis*, upon which the authority to repeal is based, has occurred. As there is in this case no allegation of a breach of any condition under which the Pittsburgh and Castle Shannon Railroad Company accepted its charter, or that that charter is in any particular obnoxious to the welfare of the citizens of this Commonwealth, it cannot be successfully urged that it may be revised or abrogated by any state authority whatever. But the constitutional convention claimed for itself no such power; on the other hand, it has expressly set down (art. 2 of the schedule) that all rights, actions, prosecutions and contracts shall continue as if the constitution had not been adopted. And by the 2d section of the 16th article, it is manifest that the convention did not intend to subject any private corporation to any of the provisions of the constitution which might in any degree change the charter thereof. If otherwise, why say: "The General Assembly shall not remit the forfeiture of the charter of any corporation now existing, or alter or amend the same, or pass any other general or special law for the benefit of such corporation, except upon the condition that such

[Hays *v.* Commonwealth.]

corporation shall *thereafter* hold its charter subject to the provisions of this constitution."

This section is so comprehensive and clear that nothing is left for surmise or doubt. Charters of private corporations are left exactly as the new constitution found them, and so they must remain until the companies holding them shall enter into a new contract with the state by accepting the benefit of some future legislation. It is only on the theory that the manner of voting is not material that the cumulative system is sought to be saddled on this corporation; but if this company does not hold its charter *subject to the provisions of the present constitution,* how can it be made subject to any one of such provisions, material or immaterial? It is indeed manifest that such an argument is foreign to the question in hand. It might apply to a legislative enactment attempting to alter this charter, but it cannot apply to this case, arising, as it does, directly on the constitution itself, for it is excluded by the very terms of that instrument.          The judgment is reversed.

Mr. Justice WOODWARD dissented.