[No. 30456. Department Two. March 29, 1948.]

THE STATE OF WASHINGTON, *on the Relation of Walter V. Swanson et al., Appellants,* v. BEN PERHAM, SR., *et al., Respondents.*[1]

[1]Reported in 191 P. (2d) 689.

*Walter V. Swanson,* for appellants.

*Grady & Grady* and *Gavin & Robinson,* for respondents.

Steinert, J.—The basic question presented to us for decision is this: Are stockholders of a private corporation, organized under the general business corporation act of 1919, the by-laws of which corporation provide for straight voting of stock, entitled, solely by virtue of the adoption of the uniform business corporation act of 1933, to vote their stock cumulatively, over the objection of the majority stockholders, at a stockholders' meeting called for the purpose of electing directors?

Relators, constituting a minority of stockholders of the corporation, brought this suit to compel recognition of such right of cumulative voting claimed by them. Defendants, constituting a majority of the stockholders, appeared in resistance to the claim. The trial court, sitting without a jury, held that relators were not entitled to vote their stock cumulatively and entered judgment dismissing the action. Relators appealed.

Perham Fruit Company, the corporation whose stockholders' voting rights are here involved, was organized in 1919, under the general corporation laws of the state of Washington. In 1942, it changed its name to Perham Fruit Corporation and has borne that name ever since. It has always been, and now is, a private corporation qualified to engage in buying, selling, handling, and otherwise dealing in fruits, vegetables, grain, and all kinds of agricultural, horticultural, and poultry products. At the time with which we are here concerned, it was capitalized at $151,000, represented by 750 shares of common stock and 760 shares of preferred stock, each share having a par value of $100. The common stock alone has voting power. The board of directors of the corporation consists of three members. The by-laws provide that at all stockholders' meetings each stockholder shall be entitled to cast one vote for each share of stock standing in his name on the books of the corporation.

The respondents herein, Ben Perham, Sr., Ben Perham, Jr., and Frank E. Freshwater, together hold 380 shares of common stock of the corporation, or 50.66⅔ per cent of the total amount of the outstanding common stock. Ben Perham, Jr., is the son, and Frank E. Freshwater is the son-in-law, of Ben Perham, Sr. The relator appellants, Walter V. Swanson, Betty Crockett, Herbert Crockett, Virginia Turner, John Turner, John M. Bloxom, Marian Bloxom, Merritt Bloxom, Jr., and Mary Jane Bloxom, together hold 370 shares of common stock, or 49.33⅓ per cent of the total amount of stock of that classification.

The 1947 annual meeting of stockholders of the corporation was held on June 28th of that year, all of the voting

stock being represented in person or by proxy. Respondent Ben Perham, Sr., president of the corporation, presided as chairman at that meeting. The three respondents above named and the appellant Swanson were nominated for the three offices of director. Appellants thereupon claimed the right to cast their votes cumulatively, as hereinafter described. The chairman ruled that this could not be done, and that the only permissible method of voting was that of "straight" voting. The three respondents accordingly cast their votes in this latter manner, with the result that each of them received 380 votes for such office. Appellants nevertheless insisted on casting their votes cumulatively, for Mr. Swanson, with the result that by this method he received 1,107 votes. The chairman refused, however, to allow those votes to be counted in that manner, but insisted that they be counted according to the straight voting method, which would have given Swanson only 369 votes. Respondents having each received 380 votes by the straight voting method, amounting to a majority of all votes entitled to be cast in that manner, they were declared duly elected directors.

Appellants as relators thereupon instituted this action to have their rights relative to the voting of their stock in such case determined.

As stated above, the by-laws of the corporation provide that each stockholder shall be entitled to cast one vote for each share of stock standing in his name on the books of the corporation. This was in accordance with Rem. Rev. Stat., § 3812, the existing statute in 1919 when the corporation was organized. This statute provided in part as follows:

". . . all elections shall be by ballot, and each stockholder, either in person or by proxy, shall be entitled to as many votes as he may own, or represent by proxy, shares of stock, and the person or persons receiving the greatest number of votes shall be trustee or trustees. . . ."

This method of voting is referred to as the "straight voting method." It differs from the "cumulative method" in that, by the latter method, a stockholder, instead of casting for each one or more of the candidates or nominees for the

office of director as many votes as would equal the number of his shares of stock, is allowed to give one candidate as many votes as will equal the number of directors to be elected multiplied by the number of his shares of stock, or otherwise to concentrate and distribute the number of his votes as he may see fit.

■ It is well settled that, in the absence of express provision therefor by the charter or by-laws of a corporation, by a general statute, or by a constitutional provision, a stockholder has no right to cumulate his votes. 5 Fletcher, Cyclopedia Corporations (Perm. ed.), 161, § 2048; 13 Am. Jur. 527, Corporations, § 487; 19 C. J. S. 46, Corporations, § 720.

■ In this state, the right to vote shares of stock cumulatively was specifically conferred by the uniform business corporation act, adopted in 1933. Chapter 185, Laws of 1933, § 28 (Rem. Rev. Stat. (Sup.), § 3803-28 [P.P.C. § 449-3]). That section confers and defines the right to vote at stockholders' meetings as follows:

"I. Except as otherwise provided in the articles of incorporation, every shareholder of record shall have the right at every shareholders' meeting to one vote for every share standing in his name on the books of the corporation. . . .

"III. In the election of directors, every shareholder of record shall have the right to multiply the number of votes to which he may be entitled under subdivision 1 of this section by the number of directors to be elected, and he may cast all such votes for one candidate or he may distribute them among any two or more candidates."

The section of the former law providing for straight voting, Rem. Rev. Stat., § 3812, heretofore quoted, was impliedly repealed by § 62 of the 1933 act (Rem. Rev. Stat. (Sup.), § 3803-62 [P.P.C. § 441-27]), which provides that all acts or parts of acts inconsistent with the 1933 act are repealed. This former provision for straight voting was later specifically repealed by an amendment to the 1933 act, passed in 1939 (Rem. Rev. Stat. (Sup.), § 3803-62a), which also specifically repealed many other sections of the former law.

It is conceded by respondents that, by express provision in the Washington constitution, the state has reserved to itself the power to alter, amend, or repeal laws relating to corporations. Art. XII, § 1, of the organic law provides:

"Corporations may be formed under general laws, but shall not be created by special acts. All laws relating to corporations may be altered, amended, or repealed by the legislature at any time, and all corporations doing business in this state may, as to such business, be regulated, limited, or restrained by law."

It is now universally recognized as an historical fact that constitutional or statutory provisions reserving to the legislature the power to alter, amend, or repeal corporate laws or existing charters were formulated and adopted because of the principle established by the famous case of *Dartmouth College v. Woodward*, 17 U. S. (4 Wheat.) 518, 4 L. Ed. 629. In that case, the United States supreme court held that a charter which had been granted by the British crown to a private corporation constituted a contract within the meaning of Art. I, § 10, of the United States constitution, wherein it is provided that no state shall make any law impairing the obligation of contracts, and that consequently a statute of the state of New Hampshire increasing the number of trustees of Dartmouth College as fixed by its charter, and providing for the appointment of a majority of the trustees by the executive government of New Hampshire, instead of by the board of trustees as the charter provided, was unconstitutional and void.

In his concurring opinion in that case, Mr. Justice Story took occasion to say:

"If the legislature mean to claim such an authority, it must be reserved in the grant."

Following the decision of the *Dartmouth College* case, and acting upon the suggestion of Justice Story, many, if not most, of the states of the Union in course of time incorporated in their constitutions, or else enacted by statute, provisions reserving to the state, through its legislature, the right to alter, amend, or repeal laws which granted corporate charters or authorized the creation of corporations

under general laws. That practice was followed in this state in 1889 by the framing and ratification of our constitution, which included Art. XII, § 1, *supra.*

Pursuant to that constitutional provision, the legislature of this state in 1933 adopted the uniform business corporation act, chapter 185, p. 770, Laws of 1933 (Rem. Rev. Stat. (Sup.), § 3803-1 [P.P.C. § 444-1] *et seq.*), which has been further amended in subsequent years.

Since the determination of the question involved in the present case depends upon the construction to be given to the 1933 act, it is necessary to refer with particularity to certain of its provisions.

As heretofore set forth, this act confers the right of cumulative voting at elections of directors, and a subsequent amendment to the act specifically repealed the former law providing for straight voting only.

Section 61 of the act (Rem. Rev. Stat. (Sup.), § 3803-61 [P.P.C. § 441-25]) makes the act applicable to existing corporations, except where otherwise expressly stated. We quote the section:

"*Except where otherwise expressly stated herein,* this act shall be applicable to any *existing* corporation formed under general incorporation laws of this state for the purpose or purposes for which a corporation might be formed under this act." (Italics ours.)

Immediately following §§ 62 and 62a, the repealing sections of the act, is § 63 (Rem. Rev. Stat. (Sup.), § 3803-63 [P.P.C. § 441-29]), which constitutes a saving clause. It provides:

"This act shall not *impair or affect* any act done, offense committed or *right accruing, accrued or acquired,* or liability, penalty, forfeiture or punishment incurred *prior to the time this act takes effect, but the same may be enjoyed, asserted, enforced, prosecuted, or inflicted, as fully and to the same extent as if this act had not been passed.*" (Italics ours.)

With these sections of the statute before us, our inquiry reduces itself to the question whether the provision of Rem. Rev. Stat., § 3812, now repealed, prescribing the straight

voting method, constituted a basis for the establishment, or creation, of "a right accruing, accrued, or acquired" by the stockholders of a corporation in existence during the time that act was in effect, with the result that "rights" established by virtue of that statute "may be enjoyed, asserted, enforced . . . as fully and to the same extent as if this act [uniform business corporation act of 1933] had not been passed."

█ From the time of the decision in the *Dartmouth College* case, *supra*, it has been universally conceded that the charter of a corporation or the articles of incorporation constitute a contract. It has also been frequently stated, and it is generally recognized, that charters and articles of incorporation constitute contracts having a four-fold character, that is, a contract (a) between the state and the corporation; (b) between the state and the stockholders; (c) between the corporation and the stockholders; and (d) between the stockholders themselves. 1 Thompson, Corporations (3d ed.), 417, § 332; 13 Am. Jur. 220, 224, Corporations, §§ 77, 79; 18 C. J. S. 456, Corporations, § 71.

█ The laws of the state in which a corporation is organized, whether such laws be of constitutional or statutory origin, enter into and become a part of its *articles of incorporation*. As expressed by the authorities, the charter of a corporation organized under general law consists of its articles of incorporation, the existing state constitution, the particular statute under which the corporation is formed, and all other general laws applicable thereto. 13 Am. Jur. 215, Corporations, § 73; 18 C. J. S. 422, Corporations, § 43.

█ When the legislature of this state passed the uniform business corporation act in 1933, it of course was well aware of the constitutional reservation of power to alter, amend, or repeal all laws relating to corporations. It must be taken as a fact that by incorporating § 28 (3) in the act, the legislature deliberately intended to amend the former law with respect to voting rights, by substituting the cumulative method for the straight voting method, in so far as elections of directors are concerned. However, it must also be conclusively presumed that the legislature deliberately in-

tended to incorporate § 63, the saving clause, in the act, and that it had some purpose in mind in adopting that section.

The legislature well knew that, during the forty-four years subsequent to the adoption of the constitution, many corporations had come into existence in this state, and that millions of dollars had been invested in such enterprises. It knew further, or must be presumed to have known, that much, if not most, of that capital investment had been made in reliance upon the law as it formerly existed, and that by virtue of such investment stockholders had acquired certain rights with respect to voting at stockholders' meetings. The logical conclusion to be drawn from § 63 is that the legislature thereby intended that *no right,* accruing, accrued, or *acquired* prior to the effective date of the act, should be *impaired or affected* by that act, but, on the contrary, that every such right could be enjoyed, asserted, or enforced as fully and to the same extent as if the act had not been passed.

With this interpretation of the act here in question, we are brought to the question whether the right to vote according to the straight voting method was a vested right acquired by the stockholders of this corporation, saved and protected by § 63 of the uniform business corporation act, and therefore not impaired or affected by § 28 (3) conferring the right of cumulative voting.

■ In our opinion, the right of a stockholder to vote for directors *is* a valuable vested property right arising out of the contract of incorporation, and it is therefore a right saved and protected by § 63 of the uniform business corporation act. It is not impaired or affected by § 28 (3), for to deprive the stockholder of such right is to deprive him of an essential attribute of his property.

This principle and the reasons underlying it are well expressed in the case of *Lord v. Equitable Assurance Society,* 194 N. Y. 212, 87 N. E. 443, 22 L. R. A. (N.S.) 420, in the following paragraph quoted therefrom:

"The stockholders of a corporation, as such, have no direct power of management, and even by united action they can

neither bind nor loose the company by making contracts or controlling investments. The capital stock owned by them is property. It represents an investment upon which they are entitled to dividends, provided they are earned, and whether they can be earned or not depends on the management. Indeed, the safety of the entire investment depends on the power to manage the corporate business, because, even in the case of the defendant, with its immense surplus, careless and improvident management might impair the value of the stock or utterly destroy it. The right to vote for directors, therefore, is the right to protect property from loss and make it effective in earning dividends. In other words, it is the right which gives the property value and is part of the property itself, for it cannot be separated therefrom. Unless the stockholder can protect his investment in this way he cannot protect it at all, and his property might be wasted by feeble administration and he could not prevent it. He might see the value of all he possessed fading away, yet he would have no power, direct or indirect, to save himself, or the company from financial downfall. With the right to vote, as we may assume, his property is safe and valuable. Without that right, as we may further assume, his property is not safe and may become of no value. To absolutely deprive him of the right to vote, therefore, is to deprive him of an essential attribute of his property. To so undermine that right as to essentially affect its power of protection, would, under ordinary circumstances, undermine the right to property involved in the ownership of stock and we have so held."

■ If a single stockholder has the right to vote his shares of stock in the manner provided by law as it existed at the time the corporation was formed, and, if such right is a contractual property right, then certainly it is equally the right of the majority stockholders by their combined votes, cast in the same manner, to elect those whom they prefer as directors to manage the affairs of the corporation, and such right is likewise a valuable contractual property right. The right which the majority stockholders thus have, under the straight voting method, is the right to elect not merely *some* of the directors, but *all* of them. That right "accrued" or was "acquired" by the majority stockholders in this instance prior to the time of the enactment of the

uniform business corporation act of 1933, under which the cumulative method of voting was conferred.

It needs no argument to demonstrate that a substantial minority of stockholders might, by cumulating their votes, elect one of three directors to be selected at a stockholders' meeting. The instant case presents just such an illustration. In fact, relators might have so distributed their cumulated votes as to elect two directors, in the event the majority stockholders did not resort to the same method. Obviously, such results would "impair," and certainly would "affect" the "accrued" or "acquired" right of the majority, which right could then no longer "be enjoyed, asserted, enforced . . . as fully and to the same extent as if this act [of 1933] had not been passed."

This very question was long ago presented to and decided by the supreme court of Pennsylvania, in *Hays v. Commonwealth*, 82 Pa. 518, which has often been cited and is said to be a leading case on the subject.

The facts in that case were similar to those involved here. A railroad company was incorporated in 1871. Its charter provided that, at all general meetings or elections by stockholders, each share of stock entitled the owner thereof to one vote. A short time later, a new state constitution was adopted, which contained a provision with reference to voting, reading as follows:

" 'In all elections for directors or managers of a corporation, each member or shareholder may cast the whole number of his votes for one candidate, or distribute them upon two or more candidates, as he may prefer.' "

Section 2 of the schedule (a statement annexed·to and adopted with the new constitution) provided:

" 'All laws in force in this Commonwealth at the adoption of this constitution not inconsistent therewith, and all rights, actions, prosecutions and contracts shall continue as if this constitution had not been adopted.' "

At an election of directors, held after the adoption of the new constitution, some of the stockholders. claimed the right to cast the entire number of their votes for one candidate, or to distribute them upon two or more, con-

formably to the provision for cumulative voting set forth above. The supreme court of Pennsylvania held that the provision for cumulative voting contained in the new constitution did not apply to a corporation which existed prior to the adoption of that constitution. The decision was based on two grounds: (1) that the right of the majority stockholders to elect all of the members of the board of directors was a vested right which the constitutional convention could not alter or impair, even if it had intended to do so; and (2) that in any event, § 2 of the schedule quoted above indicated the positive intention of the convention not to take away or alter that right. We quote from the opinion:

"Thus [by cumulative voting], those holding a minority of the shares of the stock of this corporation would be enabled to do what under the charter is impossible, to wit, to elect, in spite of the majority, one or more of the managing officers. Now, whilst it cannot be said that this would not be an alteration in the terms of this charter, it is nevertheless urged that it is a mere regulation of the right of suffrage in corporations, but affects the vested rights of no one. But if it be not a vested right in those who own the major part of the stock of the corporation, to elect, if they see proper, every member of the board of directors, then I would like to know what a vested right means. This was part of the contract under which they entered into the company, and for which they paid their money. The compact was, that they should have the power to select those who should have the management and control of the funds which they adventured in this enterprise. If, indeed, it be admitted that the minority in a board of directors amounts to nothing, the above stated proposition would be admissible, but we cannot seriously entertain such an idea, for it was just because such a minority does amount to something, and because it often can control, or modify, the acts of a majority, that the introduction of the constitutional provision under discussion was thought necessary. The framers of this part of our constitution were no neophytes in legal science, but masters and teachers, who well knew what they were about, and that they intended to introduce a radical change in the law governing corporations is not doubtful. But when we have come to this conclusion we have reached the turning point of this case, for if the charter method of voting be a material part of the

organic law of the company, it follows, that the constitutional convention, even had it so intended, could not alter that method."

Then, on the second ground of the decision, the court said:

"But the constitutional convention claimed for itself no such power; on the other hand, it has expressly set down (art. 2 of the schedule) that all rights, actions, prosecutions and contracts shall continue as if the constitution had not been adopted."

The same question was similarly decided in the case of *Smith v. Atchison, T. & S. F. R. Co.,* (C.C.A. 1) 64 Fed. 272. The facts and the holding of the court are accurately set forth in the syllabus, from which we quote:

"The charter of the defendant railroad corporation, granted in 1859, by a special act of the legislature of the territory of Kansas, provided that, in elections of directors, each shareholder should have one vote for each share of stock held by him. The constitution of the state of Kansas, assented to by congress on the admission of that state, provides that all laws in force in the territory at the time of the acceptance of the constitution, not inconsistent with it, shall continue in force. It also provides (article 12, § 1) that the legislature shall pass no special act conferring corporate powers; that corporations may be created under general laws, but such laws may be amended or repealed; but it declares that all rights arising under the territorial government shall continue. The legislature of the state of Kansas, by an act passed in 1876, and amended in 1881, provided that, in all elections of directors of any incorporated company, each stockholder might cast for any one candidate as many votes as he held shares of stock, multiplied by the number of directors to be elected. *Held,* that no power was acquired by the legislature of the state, through the provisions of the constitution and its acceptance by congress, to amend the charter of defendant without its consent, and that the last-mentioned statute, accordingly, did not apply to its elections.

"*Held,* further, that the right to amend the defendant's charter in this respect was not reserved to the territory by an act passed before the charter, and providing that any charter thereafter granted might be amended, provided such amendment should not conflict with any right vested

by the charter; since the right of each shareholder to cast one vote for each share is a vested right."

■ Even where there is no saving clause in the constitutional or legislative reservation of power, the reserved power of the state to alter or amend charters of existing corporations is not unlimited. The state may still not pass laws altering or amending charters of. such corporations in such a way as will change their fundamental character or impair the object of the grant or rights vested thereunder, or in such way as will impair the contractual relations or rights of stockholders among themselves or existing between them and the corporation. In the case of *Garey v. St. Joe Mining Co.,* 32 Utah 497, 91 Pac. 369, 12 L. R. A. (N.S.) 554, wherein the authorities, judicial and textual, are reviewed, the court said:

"From the texts and the cases it will be seen that under the reservation the state is not only unauthorized to alter or amend charters of existing corporations in such a way as will change the fundamental character of the corporation, impair the object of the grant, or rights vested thereunder, but it is also unauthorized to alter or amend them in such a way as will impair the contractual relations or rights of the stockholders among themselves, or between the corporation and its stockholders; and it will also be seen that under the reserved power the Legislature has only the right to amend the charter, or laws with respect thereto, which it would have had in the event it had been decided in the *Dartmouth College Case* that the federal Constitution did not apply to corporate charters. The *Dartmouth College Case* did not call in question nor involve any right or relation of the corporators among themselves. It involved only the relation of the corporation and the state. Without the reservation it was held that even such relation cannot be changed without doing violence to the federal Constitution. Because of the reserved power the state may now amend or alter the charter, so far as affecting the contract with itself, and so long as it does not change the fundamental character of the corporation or impair any vested rights acquired thereunder. But, as stated by the authorities, the right is reserved for the benefit of the state and of the public and for public purposes. The power can only be exercised to the extent that the state is interested. It can alter or modify any right, privi-

lege, or immunity granted by it. It cannot, however, reach out and impair the obligations of contracts existing between the corporation and its members, or among the corporators themselves, any more than it can impair the obligations of contracts existing between other individuals."

See, also, to the same effect the case of *Wheatley v. A. I. Root Co.,* 147 Ohio St. 127, 69 N. E. (2d) 187, citing many cases in support of the doctrine that the reserved right of amendment, alteration, or repeal, whether contained in a statute or in a constitutional provision, must be exercised in subjection to the various other constitutional commands and restrictions, particularly those pertaining to due process of law, equal protection of the laws, and nonimpairment of the obligation of contracts.

Appellants contend that the provisions of the former law establishing straight voting did not thereby create a vested right in the stockholders, under which they could require that the shares of common stock of the corporation be voted in the straight voting method. In making that contention, they place sole reliance upon the case of *Attorney General v. Looker,* 111 Mich. 498, 69 N. W. 929, 56 L. R. A. 947, which later was affirmed by the United States supreme court. *Looker v. Maynard,* 179 U. S. 46, 45 L. Ed. 79, 21 S. Ct. 21.

The facts in that case briefly were these: The Michigan Mutual Life Insurance Company was organized in the state of Michigan in 1870 under a general law for the incorporation of life insurance companies approved March 20, 1869. That act provided, *inter alia,* that the articles of association of any corporation organized thereunder should prescribe the manner of electing directors. The articles of this particular insurance company provided that in the election of directors every shareholder would be entitled to one vote for every share of guaranty capital standing in his name on the books of the company. From the origin of the company until the time of the annual meeting in 1896, directors were elected in the manner prescribed by the articles of association, without objection by any stockholder. The constitution of Michigan, adopted in 1850, pro-

vided in Art. XV, § 1, that corporations may be formed under general laws, and that all laws passed pursuant to that section may be amended, altered, or repealed.

In 1885, the Michigan legislature passed an act giving every stockholder of a corporation the right to vote the number of shares of stock owned by him for as many persons as there may be directors to be elected, or else to cumulate such shares and give one candidate as many votes as would equal the number of directors multiplied by the number of shares of his stock. *The act contained no saving clause.* At the annual meeting of the stockholders held January 26, 1896, a single stockholder of the company claimed the right to vote his stock according to the cumulative method. The claim was rejected by the other stockholders. Had his claim been allowed, he would have succeeded in electing two directors.

Upholding the claimed right of the stockholder to vote his stock according to the cumulative method, the supreme court of Michigan laid down as the rule to be applied the following:

" 'A power reserved to the legislature to alter, amend, or repeal a charter authorizes it to make any alteration or amendment of a charter granted subject to it which will not defeat or substantially impair the object of the grant, *or any rights vested under it,* and which the legislature may deem necessary to secure either that object or any public right.' " (Italics ours.)

The court applied that rule upon the basis of the following statement:

"The nature of a corporation is therefore an important consideration in determining the extent of the reserved right of the State to alter or amend its charter. Is it a corporation in which the public is interested? If so, the legislature may exercise the reserved power as just stated. Is not the public interested in the proper control and management of great life-insurance companies, like the Michigan Mutual Life Insurance Company? Is it not true that their incomes are largely drawn from the public, and that the proper or improper management of the company's affairs affects the public as well as the stockholders? Is it not true that the policyholders of the company are quite as

much interested in what becomes of the assets of the company as the stockholders themselves? The answer to each of these questions must be in the affirmative."

Many cases were cited by the Michigan court in support of its conclusion upon the theory adopted by it.

It is manifest that the *Looker* case, *supra,* as decided by the supreme court of Michigan, is distinguishable from the case at bar in two vital respects: (1) primarily, in that no saving clause, such as we have here, was a part of the statute there involved; and (2) in that the corporation in the *Looker* case was one in whose affairs the public was vitally interested and whose management affected not only its stockholders but the public as well; while, here we have simply a private corporation in whose affairs and management the public has no interest or concern whatever. That case therefore has no bearing upon the question with which we are here concerned.

The gist of the opinion of the United States supreme court upon the same case is contained in the following paragraph:

"The effect of such a provision [reserving power to alter, amend, or repeal], whether contained in an original act of incorporation, or in a constitution or general law subject to which a charter is accepted, is, at the least, to reserve to the legislature the power to make any alteration or amendment of a charter subject to it, which will not defeat or substantially impair the object of the grant, *or any right vested under the grant,* and which the legislature may deem necessary to carry into effect the purpose of the grant, *or to protect the rights of the public or of the corporation, its stockholders or creditors,* or to promote the due administration of its affairs." (Italics ours.)

For the reasons previously stated with respect to the decision by the Michigan court, the decision of the supreme court of the United States in that case does not govern the situation presented here.

■ It is our opinion that § 28 (3) of the uniform business corporation act (Rem. Rev. Stat. (Sup.), § 3803-28 (3)) relating to cumulative voting does not apply to this case and hence does not divest the majority stockholders of their

vested right to elect all of the directors of the corporation by the straight voting method.

 Appellants make one other contention. They urge that the corporation and majority stockholders are estopped to assert the contractual rights discussed above, because, since the adoption of the uniform business corporation act, they have applied the rules, and taken the benefits, of that act. The matters alleged to constitute a waiver consist of making a change in the corporate name, as explained above, and in reducing the amount of the preferred stock.

Neither of those matters was the result of authority conferred solely and exclusively by the 1933 act. They both were such changes as the stockholders had the right to effect under the provisions of the law as it existed prior to that act. By making such changes the stockholders did not waive their vested rights, nor are they now estopped to assert them.

The judgment is affirmed.

MALLERY, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.