372

GOLCONDA MINING CORPORATION, *Petitioner*, v. HECLA MINING COMPANY, *Respondent*.

*Witherspoon, Kelley, Davenport & Toole,* by *Allan H. Toole* and *Robert L. Magnuson,* and *LeSourd, Patten, Fleming & Hartung,* by *Dwayne E. Copple,* for appellant.

*Brown, Peacock & Keane,* by *James P. Keane, Cashatt, Williams, Connelly & Rekofke,* by *Jerome Williams,* and *Paine, Lowe, Coffin, Herman & O'Kelly,* by *Lawrence R. Small,* for respondent.

HALE, J.—Golconda Mining Corporation, owning 13 per cent of the capital stock, was the largest single shareholder of Hecla Mining Company. It declared an intention to vote cumulatively for directors at Hecla's annual meeting of shareholders to be held on May 29, 1969. Hecla's officers, asserting that neither the corporate charter nor existing statutes provided for cumulative voting, announced that cumulative voting would not be permitted. Golconda countered, pointing out that Hecla, although incorporated long before enactment of the Uniform Business Corporation Act, Laws of 1933, ch. 185, p. 770, had taken significant actions under it and was, therefore, bound by its mandatory cumulative voting provisions. Thereupon, Golconda brought this action for a declaratory judgment to establish its right to cumulative voting.

The trial court heard reciprocal motions for summary judgment. Denying Golconda's motion and filing a memorandum opinion of its ruling, the court granted Hecla a summary judgment declaring that Hecla's shareholders did not have the right to cumulative voting at the election of directors. Golconda appealed the denial of its motion and the granting of Hecla's summary judgment to the Court of Appeals, Division 3, which affirmed, 4 Wn. App. 262, 480 P.2d 540 (1971). This court granted review, 79 Wn.2d 1005 (1971), and the case is here on an agreed statement of facts.

Hecla was incorporated in 1898 to exist for 50 years, the maximum period then authorized by statute for the duration of corporate life. Ballinger's Codes and Statutes of Washington § 4251 (1897 ed.). Its charter contained no provision to renew or extend the term of corporate existence beyond the 50-year period. Corporation statutes in effect at the time of Hecla's incorporation provided for straight-line voting. Ballinger's Codes and Statutes of Washington § 4255 (1897 ed.).[1]

---

[1] ". . . all elections shall be by ballot, and each stockholder, either in person or by proxy, shall be entitled to as many votes as he may own, or represent by proxy, shares of stock, and the person or

In 1933, this state adopted the Uniform Business Corporation Act, Laws of 1933, ch. 185, p. 770, which gave every shareholder in a business corporation the mandatory right to vote his shares on a cumulative basis (section 28), authorized a corporation a perpetual existence (section 37), and, also pertinent to this action, provided for corporate consolidations and mergers (section 42). Apparently Hecla's directors were aware of mandatory cumulative voting provisions (Laws of 1933, ch. 185, § 28, p. 789) for in 1944, in response to directions from the Securities and Exchange Commission of the United States, their proxy solicitation statements for the annual meeting stated that "Each shareholder has cumulative voting rights under the statutes of the State of Washington." This same statement appeared in all of Hecla's management proxy solicitations for each annual meeting through and including the meeting of April 23, 1954. Thereafter, with SEC approval, this statement was dropped, and the proxy solicitations for 1955 through 1958 said that each share was entitled to one vote. Proxy statements after that, 1959 through 1967, asserted that "We have been advised by counsel that Hecla shares do not have cumulative voting rights."

Golconda claims cumulative voting rights by virtue of what we think to be two significant steps taken by Hecla under the Uniform Business Corporation Act of this state, Laws of 1933, ch. 185, p. 770, as amended from time to time thereafter. First, April 29, 1935, Hecla filed amended articles of incorporation to make its duration perpetual. Then, in 1958, the Polaris Mining Company and later, in 1964, the Lucky Friday Silver-Lead Mining Company merged with Hecla, leaving Hecla the surviving corporation of these two mergers.

Golconda emerged from the mergers as the largest single shareholder in Hecla, owning about 13 per cent of the latter's outstanding capital stock. One of Golconda's officers,

persons receiving the greatest number of votes shall be trustee or trustees . . ." Ballinger's Codes and Statutes of Washington § 4255 (1897 ed.).

Mr. H. F. Magnuson, between 1964 and 1969, served on Hecla's board of directors, and during that period was nominated by Hecla management to the board. Golconda considered him to be its representative on the board. With the refusal of cumulative voting, Golconda was unable to elect a director at or after the annual shareholders' meeting of May, 1969.

The question of whether Hecla came under the mandatory provision of the Washington Uniform Business Corporation Act establishing cumulative voting as a common right of shareholders (Laws of 1933, ch. 185, § 28, p. 789, RCW 23.01.290(3)), is clouded somewhat by subsequent legislation. RCW 23A.08.300 of the new corporation code of 1965, effective July, 1967, provided for cumulative voting *unless the articles of incorporation otherwise provided,*[2] and the same act of 1965, effective July 1, 1967, continued the right of a business corporation to amend its articles of incorporation from time to time, consistent with its original powers. RCW 23A.16.010.[3] The same code contains a savings clause the import of which is unclear, but which Hecla invokes as preserving inviolate the power to eliminate cumulative voting. RCW 23A.44.145.[4] Finally, the 1969 session

---

[2]RCW 23A.08.300: "Unless the articles of incorporation otherwise provide, at each election for directors every shareholder entitled to vote at such election shall have the right to vote in person or by proxy, the number of shares owned by him for as many persons as there are directors to be elected and for whose election he has a right to vote, or to cumulate his votes by giving one candidate as many votes as the number of such directors multiplied by the number of his shares shall equal, or by distributing such votes on the same principle among any number of such candidates."

[3]RCW 23A.16.010 states, in part: "A corporation may amend its articles of incorporation, from time to time, in any and as many respects as may be desired, so long as its articles of incorporation as amended contain only such provisions as might be lawfully contained in original articles of incorporation at the time of making such amendment . . ."

[4]RCW 23A.44.145: "The repeal of a prior act by chapter 53, Laws of 1965, shall not affect any right accrued, acquired or established, or any liability or penalty incurred, under the provisions of such act, prior to the repeal thereof. The repeal of a prior act by chapter 53, Laws of

of the legislature, presumably in aid of interpreting the 1965 act (Laws of 1965, ch. 53, p. 1053), effective July 1, 1967, RCW 23A.44.146 states:

The enactment of chapter 53, Laws of 1965, and the repeal of any prior act thereby, shall not, with respect to any corporation in existence on July 1, 1967:
(1) Permit less than a unanimous vote of the shareholders of a corporation having cumulative voting on July 1, 1967, to limit or eliminate cumulative voting in the election of directors . . .

. . .

The foregoing are declared to be among the rights accrued, acquired or established within the meaning of RCW 23A.44.145.

Laws of 1969, Ex. Ses., ch. 58, § 4, p. 672. We need not reconcile whatever disparate rights are claimed under these provisions for in this case they are more apparent than real.

After the enactment of Laws of 1965, ch. 53, p. 1053 (RCW 23A) but 2 months before that statute was to take effect on July 1, 1967, Hecla shareholders at their annual meeting on April 27, 1967, by less than a unanimous vote, adopted a resolution to amend Hecla's articles of incorporation so as to eliminate cumulative voting. On July 3, 1967, 2 days after the 1965 act took effect, Hecla filed this amendment with the Secretary of State.

As earlier observed, Mr. Magnuson had been an officer and director of Golconda since 1964 and in effect had been Golconda's representative on the Hecla board. A spirited proxy solicitation drive failed to give Golconda enough votes to elect one director through straight-line voting. By casting its 13 per cent of the shares cumulatively, Golconda could have kept one man on the 7-man board of directors; by straight-line voting, it could not. In the proxy statement prepared by Hecla's management and mailed to the shareholders preparatory to the annual meeting of May 29, 1969,

1965, shall not affect, nor constitute a repeal with respect to, the law applicable to any corporation unless the provisions of chapter 53, Laws of 1965, apply to such corporation."

Hecla made it clear it would not nominate Magnuson to be a member of its management slate of directors.

Hecla mainly advances the rationale of the *Dartmouth College* case, *Trustees of Dartmouth College v. Woodward,* 17 U.S. (4 Wheat.) 518, 4 L. Ed. 629 (1819), and our decision in *State ex rel. Swanson v. Perham,* 30 Wn.2d 368, 191 P.2d 689 (1948), in support of its position. Golconda, to the contrary, contends that neither case is of controlling import. First, Golconda contends that the so-called corporate rights which were said to be vested and thus left undisturbable by state action in the *Dartmouth College* case were explicitly overcome by the state constitution (article 12, section 1), expressly reserving the power in the state to alter, amend or repeal laws relating to corporations—a provision presumably adopted according to the suggestion of Justice Story in his concurring opinion to *Dartmouth,* and a recommendation followed by many states coming into the Union thereafter. As for *State ex rel. Swanson v. Perham, supra,* Golconda urges that it affords them a vested right to cumulative voting under the Uniform Business Corporation Act, Laws of 1933, ch. 185, § 28, p. 789 (RCW 23.01.290(3)), reading:

> In the election of directors, every shareholder of record shall have the right to multiply the number of votes to which he may be entitled under subdivision I of this section by the number of directors to be elected, and he may cast all such votes for one candidate or he may distribute them among any two or more candidates.

and that this right remained vested through subsequent savings clauses adopted from time to time as that act was superseded or amended.

Thus both sides contend for the efficacy of a savings clause, Hecla claiming preservation of straight voting and avoidance of mandatory cumulative voting under Laws of 1933, ch. 185, § 63, p. 814, the Uniform Business Corporation Act, and Golconda claiming that the cumulative voting rights made mandatory by the act of 1933 were preserved

in RCW 23A.44.145, Laws of 1967, ch. 190, § 10, p. 971, approved by the Governor March 21, 1967, reading:

> The repeal of a prior act by chapter 53, Laws of 1965, shall not affect any right accrued, acquired or established, or any liability or penalty incurred, under the provisions of such act, prior to the repeal thereof. The repeal of a prior act by chapter 53, Laws of 1965, shall not affect, nor constitute a repeal with respect to, the law applicable to any corporation unless the provisions of chapter 53, Laws of 1965, apply to such corporation.

None of the savings clauses, we think, are of controlling effect here for they do not relate to and cannot be said to remove a business corporation from the internal regulatory operations of the business corporation statutes. To rule otherwise would require us to find that the legislature intended to immunize all corporations organized before 1933 from the future effects and operation of the business corporation codes—statutes designed to regulate the corporation's internal affairs and the relationships among stockholders, directors and officers, and even with its creditors, too. No such legislative intent was declared nor can it be divined, we think, from the legislative history.

Hecla, as noted, relies principally upon *State ex rel. Swanson v. Perham, supra,* which in turn rests in part on the rationale of the *Dartmouth College* case. In *Perham,* however, the corporation had not brought itself within the Uniform Business Corporation Act of 1933 by undertaking any significant actions to utilize the benefits which the act conferred. Perham Fruit Company had been organized as a corporation in 1919 when the business corporation statutes then in force provided for straight voting—that is, one vote for each share owned or represented by proxy—in accordance with Rem. Rev. Stat. § 3812. Save for changing its name from Perham Fruit Company to Perham Fruit Corporation in 1942, the opinion shows nothing done or sought to be done by the corporation invoking the 1933 Uniform Business Corporation Act. At the annual meeting of the corporation's stockholders in 1947, stockholders holding

49.33⅓ per cent of the stock sought to vote on a cumulative basis for one of the 3-man board of directors, but the chairman declined to count their ballots so cast. They failed to elect a member to the board. In their suit to have the court declare their right to vote cumulatively, this court applied what it thought to be the *Dartmouth College* rationale. We held that the right to straight voting became vested at incorporation and could not be impaired by subsequent legislation despite Const. art. 12, § 1, which concededly was aimed directly at the *Dartmouth College* case in providing, *inter alia,* that

All laws relating to corporations may be altered, amended or repealed by the legislature at any time . . .

The instant case differs substantially from *Perham.* Here we have Hecla taking two significant steps under the Uniform Business Corporation Act of 1933, as amended: (1) It applied for and attained perpetual existence by virtue of that act, and (2) it merged with and emerged as the surviving corporate entity of two other corporations. Both of these actions were undertaken under the protective aegis of statutes then in force and except for which neither step could have been accomplished in the way it was done.

Before enactment of the 1933 Uniform Business Corporation Act, the life of Hecla would expire in 50 years from its incorporation, that is, sometime in 1948 it would cease to exist as a legal entity. In availing itself of the benefits of and to secure perpetual existence under that legislation, the corporation attained that which in the very nature of things had to be held most dear to it—everlasting life. Invoking other provisions of the same statutes, Hecla took the other significant step and emerged as the surviving perpetually existing corporate entity of two other corporations merging with it. We think that these actions, taken by Hecla under the Uniform Business Corporation Act, the first securing to it perpetual existence when it was doomed to expire under the earlier laws under which it had been organized, and the other consummating a safe and speedy

merger with two separate corporations, put Hecla under the Uniform Business Corporation Act as amended and rendered it subject to all its provisions.

■ The legislature, in amending and altering the business corporation statutes in 1933 pursuant to its power under the state constitution (Const. art. 12, § 1) in providing for perpetual existence for corporations doomed to expire, did not intend to create a no-man's-land among corporations where the business corporation statute could not operate. Corporations which under their original charter and statutes of organization would cease to exist after 50 years, ought not, we think, attain perpetual existence and at the same time immunity from the regulatory features of the very statutes which gave them that perpetual existence. The grant of indefinite life carried with it a corresponding submission to the regulatory features of the statute including the duty to allow, and the right to exercise cumulative voting. In our view, the renewal of the corporate existence constituted a new contract with the state and subjected the corporation to the laws in effect at the time of renewal.

We think that the case of *Hanks v. Borelli,* 2 Ariz. App. 589, 411 P.2d 27 (1966), states the controlling principles. There the state of Arizona on achieving statehood in 1912 provided in its constitution for cumulative voting in the election of directors. Plaintiff corporation, already in existence, thereafter renewed its existence under the new 1912 constitution and sought a declaratory judgment to determine whether it was bound by the cumulative voting provision in effect at the time of renewal. Sustaining cumulative voting and holding that the renewal subjected it to the new statutes, the court said, at page 592:

> When a grant of existence is awarded a corporation, it is subject to the laws in existence at that time. 18 C.J.S. Corporations §§ 69-71. We hold that the right to renew, which vests no property rights, *Wm. Warnock Co. v. H. D. Hudson Mfg. Co.,* 200 Minn. 196, 273 N.W. 710 (1937), 18 Am.Jur.2d Corporations § 69, when exercised, is, in effect, a renegotiation with the state and a renewal is a new

grant of the privilege of fictitious existence. Accordingly, the new contract is subject to the laws of the life-giving entity in effect at that time.

. . .

We hold that the mandatory provisions of the Arizona Constitution and statutes are binding upon a corporation either formed after the enactment of such provisions, or renewed subsequent to such provisions although initially incorporated prior to such provisions. This does not make the passage of corporation laws retrospective; rather, it recognizes that when a corporation renews its existence it then breathes a new life which includes all laws then in effect.

■ It is thus a general rule that, when an existing corporation accepts significant benefits made available by a statute enacted after its establishment, the corporation brings itself within the powers reserved by the state to alter, amend, or repeal laws controlling corporations. 7 W. Fletcher, Cyclopedia of the Law of Private Corporations § 3677 (perm. ed. 1964).

Renewal of a corporate charter by extending the term of corporate life, in legal effect, amounts to the granting of a new charter. *Federal Deposit Ins. Corp. v. Beasley,* 193 Ga. 727, 20 S.E.2d 23 (1942). Such an extension of the corporate charter brings the corporation into line with the law in effect at the time of the extension. *Fower v. Provo Bench Canal & Irr. Co.,* 99 Utah 267, 101 P.2d 375 (1940). And the same principle applies to other significant actions taken by a corporation to avail itself of statutory benefits such as consolidating and merging with other corporate entities.

Reversed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, STAFFORD, and WRIGHT, JJ., and RYAN, J. Pro Tem., concur.

Petition for rehearing denied August 4, 1972.