HAMMER and others, Respondents, vs. CASH and others,
Appellants.

*June 3—July 3, 1920.*

*Corporations: Increase of capital stock: Effect of amendment of
articles: Stockholder's right to pro rata share in new stock
issued: Stock issued by officers without authority of corpora-
tion: Validity: How determined: Action in equity: Jurisdic-
tion of court: Removal of officer elected by vote of invalid
shares.*

1. Upon an increase of the capital stock of a corporation a stock-
   holder is entitled to maintain his proportionate voice and
   influence in the corporation, and for that reason must be
   given an opportunity to purchase a proportionate amount of
   the new shares before they can be offered to outsiders.

2. An amendment of the articles of a corporation increasing the
   amount of its authorized capital stock, merely authorizes and
   empowers the corporation to issue increased stock in such
   amounts and at such times as the corporation may determine;
   but there is no obligation to issue it.

3. Where the articles of incorporation were amended so as to
   authorize an increase in the capital stock of a railroad com-
   pany for the purpose of building an extension, and the resolu-
   tion authorizing the increase provided that stock not neces-
   sary to be sold should be held in the treasury of the corpora-
   tion, and neither stockholders nor directors had authorized
   the issue of any part of the increase, a stockholder is not
   entitled, by virtue of the amendment, to purchase a propor-
   tionate number of new shares; and where the extension was
   abandoned, an issue of a portion of said stock to certain stock-
   holders, made by the president and secretary without the
   knowledge or authorization of the directors, was unlawful.

4. An action in equity is necessary to determine the validity of
   an issue of corporate stock.

5. Where a court of equity had jurisdiction of a suit wherein the
   validity of an issue of stock was attacked, it may, on canceling
   the stock, remove officers and directors elected by the voting
   of such illegal shares, without compelling a second action by
   *quo warranto,* a court of equity having jurisdiction to deter-
   mine the right to an office and to remove or enjoin an in-
   cumbent who is not entitled thereto, when it has jurisdiction
   on other grounds.

APPEAL from a judgment of the circuit court for Vernon county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

This is a stockholders' action for the cancellation of stock alleged to have been fraudulently issued by certain of the officers of the *Hillsboro & Northeastern Railway·Company,* and to declare void the election of directors of said corporation on the 10th day of December, 1918.

The *Hillsboro & Northeastern Railway Company* was organized as a Wisconsin railway corporation in 1901, with a capital stock of $50,000, consisting of 500 shares of the par value of $100 each. In November, 1910, the articles of incorporation were amended so as to authorize the issuance of $50,000 of additional stock. Thirty-one thousand seven hundred dollars of this increase was issued subsequent to the passage of ch. 593, Laws 1911, without securing the consent of or authority from the railroad commission.

November 13, 1915, the stockholders of the said railroad company adopted a resolution further increasing the capital stock of the said company in the sum of $150,000.. A certified copy of this resolution, with the certificate of the president and secretary of the company that it was adopted at a special meeting of the directors of said company, was on the 28th day of December, 1915, duly filed in the office of the secretary of state. Under date of January 21, 1916, the railroad commission authorized the company to issue 2,000 shares of stock of the par value of $100 each, making a total issue of $200,000, $31,700 of which was to be exchanged share for share for an equal amount of void stock then outstanding and the remaining $168,300 to be sold for money at not less than the par value thereof, the proceeds to be applied in defraying in part the cost of the construction of an extension of the company's line. Prior to December 11, 1917, no part of this stock had been issued except the $31,700 thereof in exchange for the stock which had been issued on the prior $50,000 increase without authority from the railroad commission, and on that date the stock then

issued and outstanding was owned as follows: *W. H. H. Cash,* 356 shares; the estate of Edward Hammer, 222 shares; F. I. Pinch, 167 shares; *Gus Weinstein,* 51 shares; C. J. Hausman, 16 shares; *John A. Cash,* 5 shares.   On said 11th day of December, 1917, *W. H. H. Cash, E. J. Hammer* as executor of the estate of Edward Hammer, deceased, F. I. Pinch, *Gus Weinstein,* and *J. A. Cash* were elected directors.   *W. H. H. Cash* was elected president and *J. A. Cash* secretary and treasurer.   Controversies had arisen among the stockholders and they had divided into what may be denominated the Cash and Hammer factions.   Holdings of stock and the officers of said company continued as on that date until December 10, 1918, the day of the annual meeting of the stockholders according to the by-laws of said corporation.   As the stock was then held, it appeared that *Hammer* controlled the stockholders' meeting and would dictate the election of directors.   In order to secure control of a majority of the stock, *W. H. H. Cash* as president and *J. A. Cash* as secretary and treasurer of said company, on the 10th day of December, 1918, issued to the defendant *W. H. H. Cash* 100 shares of the unissued stock of said company, taking in payment therefor a promissory note at par for $10,000, payable on demand, and they also issued to *C. F. Cash* one share of the unissued stock of said company.

The issue of said stock to said *W. H. H. Cash* and his son *C. F. Cash* was made without any knowledge or consultation with any of the directors or officers of said corporation and without any authorization by the stockholders or directors of said company and without any intimation that any of said unissued stock should be sold or offered for sale.

At the annual stockholders' meeting held on said 10th day of December, 1918, said *W. H. H. Cash* and his son *C. F. Cash* voted the said 101 shares of stock against the protest of the other faction of the stockholders thereof, and elected

said *W. H. H. Cash* and his sons *J. A.* and *C. F. Cash* as directors of said company, thereby obtaining for said *W. H. H. Cash* control of the electorate of said company.

On the 11th day of December, 1918, the said *W. H. H. Cash* and his son *J. A. Cash,* without the knowledge or consent of any of the other officers or stockholders of said company, and without any authorization therefor by the stockholders or directors of said company, further issued of the treasury stock of said company to said *W. H. H. Cash* $1,400, *J. A. Cash* $100, A. B. Cash $100, W. N. Cash $100, and W. L. Cash $100.

The trial court entered judgment declaring void the issuance of the stock to *W. H. H. Cash* and his sons on the 10th and 11th days of December, 1918, canceling and setting the same aside, and declaring void the election of directors on the 10th day of December, 1918, and restoring the management of the affairs of the company to the directors elected at the annual stockholders' meeting held in December, 1917. From the judgment so entered the defendants bring this appeal.

For the appellants there was a brief by *J. Henry Bennett* of Viroqua, attorney, and a reply brief by *C. H. Van Alstine* of Milwaukee, of counsel, and oral argument by *Mr. Van Alstine.*

For the respondents there was a brief by *Olin, Butler, Stebbins & Stroud* of Madison, and oral argument by *Byron H. Stebbins* of Madison and *E. J. Hammer* of Hillsboro.

OWEN, J.    Appellants attempt to vindicate their title to the stock issued to them in December, 1918, upon the ground that they had the absolute right to purchase the amount of the increased stock provided for by the resolution of November 13, 1915, proportionate to the amount of stock held by them prior to the adoption of said resolution. It is firmly established as the law of this state by *Luther v. C. J.*

*Luther Co.* 118 Wis. 112, 94 N. W. 69, and *Dunn v. Acme A. & G. Co.* 168 Wis. 128, 169 N. W. 297, that upon an increase of the capital stock of a corporation a stockholder is entitled to retain and maintain his relative and proportionate voice and influence in the control and management of the affairs of the company by purchasing an amount of the increase of the capital stock proportionate to his then holdings in the corporation, and before the stock can be sold to outsiders each stockholder must be given an opportunity ·to avail himself of this right.    This principle is not questioned by respondents, but they insist that this right does not accrue until the corporation concludes to issue the increased stock, and that then it only applies to so much of the stock as it is proposed to issue; and whether this position is correct is the principal question to be determined.

The amendment of the articles of the corporation increasing its capital stock merely authorizes and empowers the corporation to issue increased stock in such amounts and at such times as may thereafter be determined by proper corporate authority.   It is under no obligation to issue the stock merely because it has acquired power and authority so to do.  Articles of incorporation are frequently so amended as to increase the amount of the authorized capital stock of a company in such amounts as will meet its contemplated requirements for some time in the future, without any thought that the whole amount of such increase shall at once be issued.   May a stockholder, immediately upon an amendment of such character becoming effective, demand that his proportionate share of the entire amount of such increase be issued to him?   Bearing in mind that this right is accorded to the stockholder in order that he may maintain his relative voice in the affairs of the corporation, it is manifest that the reason upon which the principle is founded is fully satisfied if he is permitted to purchase his relative proportion of such amount of the stock as is authorized to issue.   To illustrate, a corporation may so amend its articles

as to provide for an increase of its capital stock in the sum of $100,000. From the mere amendment of the articles, however, it does not follow that the entire amount of such increase is to be issued. Whether any part of such increase is to be issued, and when, and for what amount, rests with the corporation after it has acquired the authority so to do by the amendment to its articles. When the corporation decides to issue $50,000 of the authorized increase, the right of the stockholder is fully protected by permitting him to purchase his proportionate share of such $50,000 proposed to be issued, and this we think is as far as the rule extends.

In this case the corporation had done nothing more than to amend its articles authorizing an increase in its capital stock. Neither the stockholders nor the board of directors had taken action authorizing the issue of any part of such increase. Moreover, the resolution authorizing the increase of the capital stock recites that it is necessary to raise the money for the purpose of constructing a proposed extension of the railroad, and specifically provides "that said stock and bonds when issued be disposed of only as may be necessary to procure funds for the construction and equipment of said extension, and should it be found not to be necessary to use the entire issue hereby provided for, then the balance shall be held in the treasury of the company to be disposed of in the future as may be determined." It is without dispute that the building of the extension was abandoned when war was declared, and there is no pretense on the part of the defendants that the money accruing from the sale of this stock was necessary for the purpose of constructing the extension. Under the circumstances, the sale of the stock was not only unauthorized, but was prohibited by the fundamental governing body of the corporation, the stockholders themselves. There was therefore no power or authority on the part of the president and secretary of the company to sell the stock in question to themselves or to any other per-

son, and its issuance was void.    The judgment of the lower court canceling said stock was plainly right.

It is further claimed by appellants that the court had no power to determine the right and title of the directors, elected at the 1918 meeting, to their offices, as the right of one to an office in a private corporation must be tested by *quo warranto.* The right of the directors elected at the 1918 meeting to their offices depended upon the validity of the stock issued to the defendants on December 10, 1918. If the stock were legally issued the title to their offices could not be questioned.    In order to determine the validity of their offices, therefore, it was first necessary to establish the validity of the stock so issued.    This could be done only in a proceeding in equity.    Appellants' contention amounts to this: It was first necessary to bring an action in equity to determine the validity of the stock.    After the invalidity thereof had been determined and the stock canceled, an independent and subsequent action in *quo warranto* was necessary in order to oust the directors, so illegally elected, from office.    This position is not tenable.

"A court of equity has jurisdiction to determine the right to an office, and to remove or enjoin an incumbent who is not entitled thereto, when it has jurisdiction of the suit on other grounds, and such relief is merely incidental to the other relief sought."    3 Fletcher, Corp. § 1829.    See, also, High, Injunctions (4th ed.) §§ 1235, 1315a.

Such relief was granted in a similar action in *Luther v. C. J. Luther Co.* 118 Wis. 112, 94 N. W. 69.

*By the Court.*—Judgment affirmed.