MILWAUKEE SANITARIUM, Respondent, vs. LYNCH, Appellant.

*October 7—November 4, 1941.*

For the appellant there was a brief by *Dougherty, Arnold & Kivett* of Milwaukee, and oral argument by *Suel O. Arnold.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Bert Vandervelde,* all of Milwaukee.

MARTIN, J.  The plaintiff, respondent herein, is a corporation organized and existing under the laws of Wisconsin, with its principal place of business in the city of Wauwatosa, Milwaukee county.  It has an authorized capital of $400,000, divided into four thousand shares of capital stock of the par value of $100 each, of which three thousand six hundred shares have been issued and are outstanding.  The defendant Clara Lynch, appellant herein, is the holder of record of one hundred twenty-seven shares of said capital stock.  The defendant William A. Swift, Jr., is the holder of record of one share of the capital stock.

The corporation was organized on or about May 7, 1895, under the provisions of ch. 86, R. S.  Among other purposes for which the corporation was organized was the maintenance of a sanitarium, for the care, treatment, and relief of nervous or insane persons; and for the conduct and maintenance of one or more hospitals, asylums, or other like institutions.  At the annual meeting of stockholders, held on January 5, 1940, the holders of three thousand one hundred seventy-two shares of the capital stock (being all of the stock represented at such

meeting except the one hundred twenty-seven shares held by the defendant Clara Lynch) voted to adopt and did adopt the following resolution:

"*Resolved,* that the articles of association of Milwaukee Sanitarium, as heretofore amended, be and the same hereby are further amended by amending article third thereof so that said article third when so amended shall read as follows, to wit:

"*Third,* the capital stock of said corporation shall be four hundred thousand dollars ($400,000) and shall be divided into four thousand (4,000) shares of one hundred dollars ($100) each.

"Such amount of any unissued or treasury stock of said corporation as the board of directors from time to time may deem wise, but not exceeding an aggregate of ten per cent (10%) of the total authorized capital stock may be issued or sold at any time or times (to such officers) or employees of the corporation and for such consideration in money or services as the board of directors may determine, without prior offer of the same to the stockholders of said corporation, and no stockholder of said corporation shall be entitled as a matter of right to subscribe for, purchase or receive any part of such issue or sale of such capital stock of said corporation or shall have any pre-emptive or preferential right to subscribe for or purchase the same."

A duly verified copy of said amendment was filed with the secretary of state on January 17, 1940, and a like verified copy, together with the certificate of the secretary of state, showing the date when said amendment was filed with him, was recorded in the office of the register of deeds of Milwaukee county on January 18, 1940.

It is alleged that since the annual stockholders' meeting the holders of three hundred additional shares of the capital stock, who were not present or represented at the annual stockholders' meeting, have consented to the amendment; thus leaving only one hundred twenty-eight shares, of which one

hundred twenty-seven shares belonging to appellant were voted against the adoption of the amendment.

On February 21, 1940, the respondent's board of directors, acting under the authority conferred by the amendment of the articles of association, adopted the following resolution:

"*Whereas,* by amendment to the articles of association of the Sanitarium, it is authorized to issue and offer for sale additional shares of capital stock up to the balance of its authorized but as yet unissued capital stock, namely, four hundred shares, to its employees in consideration for services or money as the board of directors may determine; and

"*Whereas,* it is in the best interests of the Sanitarium and its stockholders to sell a portion of such stock to Dr. Lloyd H. Ziegler, associate medical director of the Sanitarium, who has agreed to purchase such stock upon the terms hereinafter set forth;

"*Resolved,* that the officers of the Sanitarium be and they hereby are authorized and directed to sell to Dr. Lloyd H. Ziegler thirty shares of the capital stock of the Sanitarium at a price of $185 a share, twenty shares to be sold for cash payable upon delivery of such shares, and the remaining ten shares to be transferred, at said price, as part of the compensation of Dr. Ziegler pursuant to the resolution of the directors adopted January 15, 1940.

"*Further resolved,* that the officers of the Sanitarium be and they hereby are authorized and directed to institute proceedings for a declaratory judgment with respect to the validity of said amendment to the articles of association and the powers of the board of directors thereunder, and that the arrangement for sale of such stock to Dr. Ziegler provide for consummation upon approval thereof by counsel for the Sanitarium."

Among other facts, the court found that the board of directors of respondent corporation, in order to secure permanency of officers, physicians, and other employees, and to minimize the possibility of their taking employment elsewhere, desire to increase their interest in the corporation and its continued success through the issuance and sale to them of stock of the plaintiff corporation, so that they will have a

financial interest in the corporation; that the directors believe that such action is for the best interests of the corporation and to the benefit of its stockholders, and tends to protect the value of the stock in the corporation, which depends to a large extent upon the personnel of the medical staff and of the management; that the board of directors are of the view that the associate medical director should be a person of national reputation in the field in which the plaintiff corporation is engaged, and also that inasmuch as he may sometime be expected to take over work now performed by the medical director, he should, through ownership of stock in the corporation, have a greater personal interest in the corporation than that which a salaried person would normally have, so that there may be a greater incentive to continue his association with the plaintiff corporation.

The court further found that:

"To carry out their plan with respect to continuity of operations the board of directors secured Dr. Lloyd H. Ziegler as an associate medical director approximately three (3) years ago after seven or eight years of endeavor on the part of the plaintiff corporation to secure a suitable person, and have made tentative arrangements to issue to him, as part of his compensation for the year 1940, ten (10) shares of stock at a valuation of one hundred eighty-five dollars ($185) a share, and also to issue to him twenty (20) shares of stock for a cash consideration of one hundred eighty-five dollars ($185) per share, and the board of directors desire in the future to make available to Dr. Lloyd H. Ziegler and also to such other employees and officers of the corporation, when it is deemed to be in the best interests of the corporation, additional shares of stock of the corporation."

The defendant Clara Lynch objects to the issuance of the stock on the ground that she has not been afforded an opportunity to subscribe for a *pro rata* portion thereof.

While appellant assigns many alleged errors, both as to the findings and the conclusions of law, her main contention is that she had a pre-emptive right to subscribe for her *pro*

*rata* share of the additional issue of stock. It should be noted at the outset in discussing this question that there is no issue as to the good faith on the part of the board of directors of the plaintiff corporation. Their good faith in the matter is stated in the record by appellant's counsel, in the following language:

"We are not challenging the good faith of the directors. I make that very clear."

This concession by appellant distinguishes the instant case from *Dousman v. Wisconsin & Lake Superior Mining & Smelting Co.* 40 Wis. 418; *Luther v. C. J. Luther Co.* 118 Wis. 112, 94 N. W. 69; *Dunn v. Acme A. & G. Co.* 168 Wis. 128, 169 N. W. 297; *Hammer v. Cash,* 172 Wis. 185, 178 N. W. 465. Those cases involve questions of fraud or unfair dealing; and, as said by this court in *Johnson v. Bradley Knitting Co.* 228 Wis. 566, 581, 280 N. W. 688:

"It is elementary law that legal power cannot be used to effectuate a fraudulent purpose."

The so-called pre-emptive right of a stockholder has certain well-recognized limitations, even in the absence of a specific provision, providing for such limitation, in the articles of incorporation. In 11 Fletcher, Cyc. Corp. p. 223, § 5136, the author states the rule as follows:

"*Exceptions and limitations to the right.* This rule of pre-emptive right is not an absolute rule of law, and its existence, extent and applicability in a particular case must be measured and determined by the facts and circumstances of the given case. Even where the right is regarded as an inherent incident of stock ownership it is subject to the general restriction that its exercise must be consistent with the object which the stock increase is legally designed to accomplish. Thus, the right is generally accorded where the new stock is to be issued for money needed for the corporate purposes but it is commonly not recognized or is recognized to a limited

extent only, where the new stock is to be issued for property, or to purchase and extinguish debts and claims against the corporation. And the existence or exercise of the pre-emptive right may be inconsistent with or barred by the peculiar provisions of the charter of the corporation, under which the increase is made, or by special agreements, assignments or other special circumstances."

Appellant refers to several articles in the Harvard Law Review on the subject of the pre-emptive right of stockholder. These articles are found in 20 Harvard Law Review, 398, 399; 26 Harvard Law Review, 76; 42 Harvard Law Review, 186, 196, 197; 43 Harvard Law Review, 586, 606, 607.

In 42 Harvard Law Review, 196, 197, the author says:

"A shareholder has no pre-emptive right if the existence of such a right is negatived by the law governing the corporation or by its articles of association. . . . The existence of a pre-emptive right is negatived by implication under the following circumstances: (a) If the directors are vested with power to issue additional shares in *exchange for property or services* for use in the business of the corporation and the additional shares are issued in the exercise of this power. . . .

"Obviously, shareholders cannot have a pre-emptive right to buy shares for cash if the directors are authorized to issue these shares in exchange for property or are authorized to issue them for cash from time to time in small amounts to raise money in the ordinary course of business. . . . To require, in each instance, a prior offering to the existing shareholders would be contrary to such a scheme of organization and would be impracticable."

In 26 Harvard Law Review, 76, it is said:

"On the other hand the business efficiency of a corporation would be seriously hampered by confining the discretion of the controlling faction too narrowly as to the need and, method of increasing its capital. The doctrine of pre-emption, therefore, should be applied as a flexible principle rather than as a rigid rule."

"When new stock is issued in payment for property purchased by the corporation, the stockholder's right is merged in the purchase, and he has an advantage in the increase of property of the corporation in proportion to the increase of stock." 52 A. L. R. 234, and cases cited.

We think it clear that in a business such as respondent's, with its success so dependent upon the character, ability, and reputation of the personnel of its staff, it may be just as necessary, and under certain circumstances even more necessary, in the interest of its stockholders, to issue stock in order to procure *services*.

However, the question under consideration is no longer an open one in Wisconsin. The right of the stockholders in good faith to so amend its articles is definitely settled by the holding of this court in *Johnson v. Bradley Knitting Co., supra*. It is there held that a corporation may amend its articles in any respect which might have been originally provided in its articles, subject, of course, to the required statutory vote.

It was further held (p. 574) that the statutes authorizing a corporation to amend its articles of incorporation are as effectively a part of certificates of stock issued thereby and of the corporate charter as though printed therein; and a person acquiring corporate stock consents in advance (p. 577) to the making of such change in the articles, as the statutes in effect at the time of such acquisition permit; and an exercise of the right by the state or by a prescribed majority of the stockholders of the corporation is neither an impairment nor a breach of the contract of such stockholder.

The provision of sec. 180.07 (1), Stats., providing for an amendment by two-thirds vote in respect of anything "which might have been originally provided in such articles" was in the statute for many years prior to and ever since the organization of the respondent corporation. The appellant, as did

all other stockholders, took her stock subject to the provisions of the statute.

Whether the amendment is in the interest of the corporation would seem to be committed to the judgment of the stockholders. In the instant case the holders of more than ninety-six per cent of the stock approved the amendment.

Appellant argues that if the board of directors feels that stock must be made available to the physicians and the associate medical director in order to stimulate their interest in the Sanitarium, such stock should be made available by the present officers and stockholders; that no necessity exists to deprive the stockholders of their pre-emptive right. This argument is entirely beside the point.

Apparently all the stockholders except appellant and her codefendant, who holds only one share of stock, were of the view that the amendment to the articles made provision for a limited stock ownership which would be in the interest of the Sanitarium and all its stockholders. A sound business policy, beneficial to the rest of the stockholders, would be beneficial to appellant.

Appellant contends that the stockholders did not have the legal right to confer upon the board of directors absolute discretion in determining the consideration to be received by the corporation for the new stock issue. The value of the stock was an issue at the trial. The trial court found the reasonable market value was $185 a share. This finding is sustained by the evidence, and the board of directors proposes to sell and Dr. Ziegler agrees to buy on that basis.

Appellant further contends that no emergency confronts the corporation which requires that the stockholders be deprived of their pre-emptive right to subscribe for additional shares. In this connection the trial court found:

"Owing to the fact that the present medical director is more than sixty (60) years of age and his health is such

that it is necessary for him during several winter months to live in a different climate and otherwise to curtail his activities, the board of directors of the plaintiff corporation have deemed it advisable to secure for the corporation an associate medical director, with a view that he shall perform the duties of medical director during the latter's absence and take over his functions gradually as and to the extent that the medical director may deem it necessary or advisable to curtail his activities."

This is also a matter which has received the approval of more than ninety-six per cent of the owners of the stock issued and outstanding. They have committed the details to their board of directors.

It is considered that the instant case is ruled by *Johnson v. Bradley Knitting Co., supra;* that the judgment is in all respects proper and should be affirmed.

*By the Court.*—Judgment affirmed.