Argued July 7, affirmed November 28, 1975

McCALLUM, *Appellant, v.* GRAY, *Respondent.*
542 P2d 1025

618

*Donald V. McCallum,* Bend, argued the cause in propria persona. With him on the briefs were Thomas V. Bryant, Jr., and McCallum and Bryant, Bend.

*Gregory R. Mowe,* Portland, argued the cause for respondent. With him on the brief were Barnes H. Ellis, and Davies, Biggs, Strayer, Stoel and Boley, Portland.

Before O'CONNELL, Chief Justice, and HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

## BRYSON, J.

Plaintiff brought this action for damages, claiming that defendant breached a shareholder's "PRE-INCORPORATION AGREEMENT." The trial court sustained defendant's demurrer to plaintiff's complaint on the ground that it failed to state a cause of action. Plaintiff refused to plead further and judgment was entered dismissing the action. Plaintiff appeals.

Plaintiff's complaint alleges the execution of a preincorporation agreement which included a copy of the "proposed Articles of Incorporation," all of which by reference was made a part of the complaint. The complaint further alleges there were three equal shareholders, plaintiff, defendant, and one Lee Evans; that Evans sold his shares and interest in the corporation to defendant; that the contemplated corpora-

tion, Abbot Recreational Lands, Inc., was incorporated under Oregon laws and the articles were subsequently amended to change the name to Sunriver Properties, Inc.; that plaintiff had performed all responsibilities by him to be performed and

"[t]hat defendant JOHN D. GRAY, after acquiring a controlling stock interest in the corporation contemplated by the contract, SUNRIVER PROPERTIES, INC., breached said contract by failing to conduct the business in accordance with, and subject to, the provisions of the preincorporation agreement in that he did:

"(1) Cause the Articles of Incorporation and Bylaws of SUNRIVER PROPERTIES, INC. to be amended so as to eliminate preemptive rights of plaintiff;

"(2) Cause ownership of SUNRIVER PROPERTIES, INC. to be diluted and additional shareholders added."

■ Both parties agree, and so state in their briefs, that the preincorporation agreement of February 5, 1965, is unambiguous. We have held that, as a general rule, if the provisions of a contract are clear and unambiguous the construction and legal effect of the contract is a question of law to be decided by the court. *Hekker v. Sabre Construction Co.*, 265 Or 552, 555, 510 P2d 347 (1973); *Rolfe v. N.W. Cattle & Resources, Inc.*, 260 Or 590, 600, 491 P2d 195 (1971).

Thus, assuming the allegations in plaintiff's complaint as true, the issue raised by the demurrer is whether defendant "breached said contract" by causing "the Articles of Incorporation and Bylaws of SUNRIVER PROPERTIES, INC. to be amended." Plaintiff alleges this action eliminated his pre-emptive rights and caused his interest in "SUNRIVER PROPERTIES, INC. to be diluted" by the issuance of additional corporate shares with additional stockholders.

■ Plaintiff argues that clause A① of the agreement provides that the shareholders will cause the articles of incorporation, attached to the agreement as Exhibit B, to be filed, and that clause P② prevents the modification or amendment of the articles unless the modification or amendment is first reduced to writing and agreed to by the parties signing the preincorporation agreement. We conclude that clause P of that agreement is nothing more than an integration provision designed to avoid parol evidence problems involving any possible dispute over contract interpretation. *See J & J Construction v. Mayernik,* 241 Or 537, 540, 407 P2d 625 (1965).

We have closely examined the preincorporation agreement and the corporate articles which were filed in accordance with the terms of the agreement. The agreement contains no provision that grants pre-emption rights in the parties or insures such rights in the corporation to be formed or that prohibits the exercise of the general power to amend the corporate articles as provided in ORS 57.355.③

---

① "A. The shareholders shall cause a corporation to be organized under the laws of the State of Oregon with an authorized capital of One Thousand (1,000) shares of no par value common stock, a copy of which proposed Articles of Incorporation are attached hereto and marked Exhibit B. The parties hereto agree that when this agreement becomes binding, as hereinafter stated, Exhibit B shall be forthwith filed with the Corporation Commissioner of the State of Oregon, and at the first organizational meeting of the corporation, each party hereto will use his best efforts and vote for the adoption of appropriate by-laws. * * *"

② "P. This agreement contains the entire agreement of the parties with respect to this subject matter, and no modification or waiver of any provision hereof shall be valid unless it be in writing and signed by all parties hereto."

③ ORS 57.355:

"(1) A corporation may amend its articles of incorpo-

The 1953 Oregon Legislature adopted the Model Business Corporation Act (ORS Chapter 57) with certain modifications. ORS 57.136④ provided:

"(1) Except as hereinafter provided, existing ration, from time to time, in any and as many respects as may be desired, * * *.

"(2) In particular, and without limitation upon such general power of amendment, a corporation may amend its articles of incorporation, from time to time, so as:

"(a) To change its corporate name.

" * * * * * *.

"(d) To increase or decrease the aggregate number of shares, or shares of any class, which the corporation has authority to issue.

"* * * * *.

"(p) To limit, deny or grant to shareholders of any class the preemptive right to acquire additional or treasury shares of the corporation, whether then or thereafter authorized."

④ ORS 57.136 was repealed by Oregon Laws 1975, ch 490, § 9, which in turn enacted section 10, taken from section 26A of the Model Business Corporation Act. Section 10(6) of the 1975 Act now provides:

"The pre-emptive right shall be only an opportunity to acquire shares or other securities under such terms and conditions as the board of directors may fix for the purpose of providing a fair and reasonable opportunity for the exercise of such right."

The Comment to Section 26A, 1 Model Business Corporation Act Annotated (2d ed 1971) states, at 532:

"In small or closely held corporations, the preemptive right provides a highly important protection for the relative position of the several stockholders and should be defined with care in the articles. But as corporations become larger, the importance of the right decreases. And as their capitalization becomes more complicated, the difficulties of enforcing the right increase. *In short, it is easier for the draftsman to write the rules of a particular situation in advance than it is for a court to divine them later, perhaps in wholly unanticipated circumstances.* It has been increasingly the preference of the business community, at least in the case of publicly held corporations, to eliminate the preemptive right except to the extent *specifically otherwise*

shareholders of a corporation shall have the first right to subscribe to a new issue of stock, or to treasury stock offered for sale, in proportion to their respective holdings wherever such issue or sale will adversely affect their proportionate voting power.

"(2) The pre-emptive right of a shareholder to acquire additional or treasury shares of a corporation may be limited or denied to the extent provided in the articles of incorporation.

"* * * * *"

Plaintiff's complaint specifically alleges that the defendant, "after acquiring a controlling stock interest" in Sunriver Properties, Inc., caused "the Articles of Incorporation and Bylaws of SUNRIVER PROPERTIES, INC. to be amended so as to eliminate pre-emptive rights of plaintiff." This is the crux of plaintiff's complaint against defendant.

The agreement provided there would be three shareholders, each owning 333-1/3 shares. Clause E recognized that additional capital would be required "for further land payments and operational and subdevelopment purposes." Clause G provides:

"Each of the shareholders agrees not to sell, transfer, pledge, assign or otherwise in any way dispose of or encumber any of his shares, unless and until he shall have offered to sell his shares to the corporation and thereafter to the other shareholders at a price to be determined in Paragraph J [book value or market value, whichever is lower]. * * *"

Plaintiff alleges that one of the original shareholders, Lee Evans, sold his interest and stock in the

_provided in the articles,_ though still preserving in all plenitude the equitable power of the chancellor to prevent abuse of fiduciary responsibility. * * *" (Emphasis supplied.)

enterprise to defendant, but plaintiff does not allege that this was done wrongfully or in violation of clause G. Thereafter, defendant owned two-thirds and plaintiff owned one-third of the shares. ORS 57.360(1)(c) provides that amendments to the articles "shall be adopted upon receiving the affirmative vote of the holders of at least a majority of the shares entitled to vote thereon." ORS 57.141 provides:

> "* * * The power to alter, amend or repeal the bylaws or adopt new bylaws shall be vested in the board of directors unless reserved to the shareholders by the articles of incorporation * * *."

Notwithstanding the aforementioned statutes giving a majority of the stockholders a right to amend the articles, plaintiff appears to contend that he had an implied contractual or vested right that the articles and bylaws of the corporation would not be amended and that his interest in the corporation would remain the same as when he acquired his shares. In a recent case involving similar statutes for the amending of articles and bylaws of a savings and loan association, *Dentel v. Fidelity Savings & Loan*, 273 Or 31, 539 P2d 649 (1975), the plaintiffs contended that their voting rights were "contractural [sic] and vested rights" and could not be eliminated by amending the bylaws. We held:

> "Whether a corporation can amend its articles or its bylaws and thereby change the rights of its members has been the subject of numerous judicial opinions and writings. For many years state statutes have provided that a corporation is authorized to amend its articles. * * *
>
> "* * * * *.
>
> "The 'vested rights' terminology has been attacked as being confusing and meaningless. For example, see *Davison v. Parke, Austin & Lipscomb, Inc.*, 285 NY 500, 35 NE2d 618, 622 (1941). A cor-

poration scholar has stated: ' "Vestedness" is the legal conclusion rather than the reason.' Latty, *Fairness—The Focal Point in Preferred Stock Arrearage Elimination,* 29 Va L Rev 1, 4 (1942). Section 58 of the Model Business Corporation Act has, in essence, swept away the 'vested rights' doctrine. That section was adopted as ORS 57.355 of the Oregon Business Corporation Act. The Oregon Business Corporation Act is applicable to savings and loan associations. ORS 722.020.

"The Model Act swept away the vested rights doctrine by providing in detail what amendments a corporation can make to its articles. * * *

"* * * The courts and the writers have turned to the more indefinite tests of 'fairness,' 'good faith,' 'reasonableness,' and lack of 'constructive fraud.' Henn, Corporations (2d ed), 712, § 345. Lattin, Corporations (2d ed), 586, § 160; Latty, supra (29 Va L Rev 1), Halloran, *Equitable Limitations on the Power to Amend Articles of Incorporation,* 4 Pac L J 47 (1973); Note, 37 Cornell L Q 768, 774 (1951-52).

"* * * * *

"Courts have held that an elimination or dilution of a stockholder's voting rights, under the circumstances, was 'fair' and, therefore, valid. Cases collected in Note, 37 Cornell L Q 768 (1951-52)." (Footnote omitted.)

In 1 O'Neal, Close Corporations, n. 2 at 45, § 3.39, it is stated:

"The doctrine of preemptive rights appears to have been originated to protect the proportionate voting power and proprietary interests of shareholders in corporations of the kind we now refer to as close corporations. * * *"

Whether a corporation could amend its articles of incorporation so as to eliminate a shareholder's pre-emptive rights was discussed in *Gottlieb v. Heyden*

*Chemical Corp.,* 33 Del Ch 82, 90 A2d 660, 667 (1952), and the court held:

"Any interpretation other than the one we feel bound to adopt would seriously impair the existing rights of the holders of a majority of the stock. They purchased their holdings under the assurance of the Delaware General Corporation Law, as well as the terms of the particular contract of the State of Delaware with defendant, that the defendant corporation, in which they were about to buy an interest, would have the right from time to time to make amendments to its charter, at the direction and with the approval of the holders of a majority (or other specified percentage) of the stock, and would thus be in a position to adjust itself to the exigencies of changing business conditions. Similarly, the minority stockholders purchased their holdings with full notice of this same mutability. The majority, therefore, cannot now be frozen by the minority to a charter which the majority regards as out of date."

Also, in *Milwaukee Sanitarium v. Swift,* 238 Wis 628, 300 NW 760, 764 (1941), the court was confronted with the same problem as in the case at bar and stated as follows:

"However, the question under consideration is no longer an open one in Wisconsin. The right of the stockholders in good faith to so amend its articles is definitely settled by the holding of this court in Johnson v. Bradley Knitting Co., [228 Wis 566, 280 NW 688] supra. It is there held that a corporation may amend its articles in any respect which might have been originally provided in its articles, subject, of course, to the required statutory vote.

"It was further held [citation omitted] that the statutes authorizing a corporation to amend its articles of incorporation are as effectively a part of certificates of stock issued thereby and of the corporate charter as though printed therein; and a

person acquiring corporate stock consents in advance [citation omitted] to the making of such change in the articles, as the statutes in effect at the time of such acquisition permit; and an exercise of the right by the state or by a prescribed majority of the stockholders of the corporation is neither an impairment nor a breach of the contract of such stockholder."

26 Harvard Law Review 76 states:

"* * * On the other hand the business efficiency of a corporation would be seriously hampered by confining the discretion of the controlling faction too narrowly as to the need and method of increasing its capital. The doctrine of preemption, therefore, should be applied as a flexible principle rather than as a rigid rule."

See also 18 Am Jur 2d, Corporations 797, § 275.

■ The parties to the preincorporation agreement executed and performed their duties prescribed in clause A as heretofore set forth when they filed the articles of incorporation with the Corporation Commissioner in accordance with the articles of incorporation attached to the preincorporation agreement. There is nothing further in the contract which states that the articles of incorporation cannot be amended as required from time to time. In fact, plaintiff's complaint states that the name of the corporation was changed from Abbot Recreational Lands, Inc., to Sunriver Properties, Inc., which can only be accomplished by an amendment to the articles. The complaint alleges that defendant purchased the shares of Lee Evans, but it does not state that this was wrongful. From the face of the complaint, it is plain that defendant acquired two-thirds of the original shares and thereby two-thirds of the voting power. There is no allegation that the amendment to the articles or by-laws was procured by fraud or other wrongful conduct nor can we find any provision in the preincor-

poration agreement which prohibits the exercise of the general power to amend the articles.

The trial court allowed the demurrer to plaintiff's complaint. We agree, for all of the above reasons, that the complaint which by reference made the pre-incorporation agreement a part thereof does not state a cause of action.

Affirmed.

TONGUE, J., specially concurring.

Because of the express terms of ORS 57.136 and 57.355 I feel compelled to concur in the result reached by the majority.

The position of a minority stockholder in a small closely held corporation is at best precarious. See *Baker v. Commercial Body Builders,* 264 Or 614, 626-27, 507 P2d 387 (1973); *Browning v. C & C Plywood Corp.,* 248 Or 574, 434 P2d 339 (1968). One of the hazards is that the majority may "dilute" the value of minority stock by the issuance of additional shares. See O'Neal and Derwin, Expulsion or Oppression of Business Associates: "Squeeze-Outs" in Small Enterprises § 4.14 (1961).

At common law the courts recognized a "pre-emptive" right of minority stockholders to share in the issuance of additional stock. Because of resulting problems in large publicly held corporations statutes were then enacted to limit such rights. See Note, The Preemptive Right of Shareholders to Subscribe to New Shares, 43 Harv L Rev 586, 609-16 (1930). Unfortunately, most of such statutes, including ORS 57.-136 and 57.355, provide limitations which apply alike to the stockholders of both large publicly held corporations and small closely held corporations and fail to provide for the peculiar problems of minority stockholders of small closely held corporations. See 1 O'Neal, Close Corporations § 3.39 (1972).