[No. 46917. En Banc. October 16, 1980.]

SEATTLE TRUST & SAVINGS BANK, *Respondent,* v.
CHARLES A. McCARTHY, *Appellant.*

*Roberts, Shefelman, Lawrence, Gay & Moch, William G. Tonkin,* and *Steven E. Cummings,* for appellant.

*Preston, Thorgrimson, Ellis & Holman, Gordon G. Conger, Alan L. Wicks,* and *Stephen A. Smith,* for respondent.

ROSELLINI, J.—In this declaratory judgment action, a bank and trust company seeks to establish the constitutionality of the action of a majority of its shareholders in voting to discontinue the preemptive right of existing shareholders to acquire unissued stock. The action was taken in June 1979 pursuant to RCW 30.12.220, which provides:

> The articles of incorporation of any bank or trust company organized under this title may limit or permit the preemptive rights of a shareholder to acquire unissued shares of the corporation and may thereafter by amendment limit, deny, or grant to shareholders of any class of stock the preemptive right to acquire additional shares of the corporation whether then or thereafter authorized.

Laws of 1979, ch. 106, § 8.

The plaintiff (respondent) is a publicly held corporation. Approximately 92.26 percent of the shares were voted in the election, and all but 1.45 percent favored the amendment of the charter. While the charter of the corporation, which was organized in 1905, did not provide for preemptive rights, it is contended by the defendant (appellant), representing the minority shareholders, that such rights were acquired as a result of long continued practice. We are of the opinion that the action taken in 1979 was valid, whether or not preemptive rights existed prior to that action.

Article 12, section 1, of the Washington Constitution provides:

§ 1 CORPORATIONS, HOW FORMED. Corporations may be formed under general laws, but shall not be created by special acts. All laws relating to corporations may be altered, amended or repealed by the legislature at any time, and all corporations doing business in this state may, as to such business, be regulated, limited or restrained by law.

When the Seattle Trust and Savings Bank was incorporated in 1905, it was provided in Laws of 1903, ch. 176, § 16, p. 376:

Sec. 16. Every trust company hereafter organized under this act may extend its corporate existence, change its name, increase its capital stock, *make such other and further amendment, change or alteration as may be desired,* or amend its charter or certificate of incorporation in manner following: . . . *Provided,* That the certificate to be made and filed in pursuance to this section shall contain *only such provisions as it would be lawful and proper to insert in an original certificate of incorporation made at the time* of making such amendment, change or alteration; . . .

(Italics ours.)

These provisions were, as a matter of law, included in the corporate charter. In addition, the articles of incorporation provided for amendment by a designated majority. Thus, all purchasers of stock must be deemed to have consented to submit to changes in the incidents of their stock ownership, so long as such changes should be legal at the time of amendment. As we have seen, the legislature in 1979 expressly authorized banks and trust companies to amend their articles of incorporation so as to deny preemptive rights.

The defendant contends, however, that preemptive rights, once accorded, become a vested and contractual right and cannot be divested without the unanimous consent of the shareholders. It is not disputed that as a practical matter, where corporate stock is widely held, it is

virtually impossible to secure the participation of all stock-holders at an election. Therefore, if the defendant's view is correct, a corporation in the position of the plaintiff cannot amend its articles to deny preemptive rights.

The trial court found that preemptive rights are burdensome to a corporation such as the plaintiff, when it seeks to acquire additional capital; that there is a significant trend among banking corporations to eliminate such rights; and that a corporation allowing preemptive rights is at a disadvantage in competing for available new capital. The State has an interest in the financial health of banking and trust institutions, for the protection of their depositors as well as their shareholders. *See Overlake Homes, Inc. v. Seattle-First Nat'l Bank,* 57 Wn.2d 881, 360 P.2d 570 (1961). The trial court's findings show the State's interest, as well as the best interest of the corporation, was served by the adoption of the amendment in question. The defendant points to no consideration of public or corporate policy which is served by the exercise of preemptive rights, where, as here, the stock is widely held.[1]

The statutes give no protection to preemptive rights. Certainly RCW 30.12.220 does not recognize them as vested rights. RCW 23A.16.010, providing for the amendment of corporate articles in accord with the law existing at the time of such amendment, and RCW 30.12.220, expressly give a corporation authority to deny preemptive rights. RCW 23A.16.060 protects the existing rights of persons other than shareholders, as well as pending litigation, but recognizes no incident of stock ownership as a vested right.

The defendant cites no case holding that preemptive rights are vested. He relies upon the case of *State ex rel. Swanson v. Perham,* 30 Wn.2d 368, 191 P.2d 689 (1948), as authority for the proposition that rights incident to stock

---

[1]It appears that majority shareholders in closely held corporations may have need of preemptive rights in order to maintain their control of the business. *See* 7A R. Eickhoff & J. Schneider, *Fletcher's Private Corporations* § 3696.3 (rev. ed. 1978). Since corporate policy is determined by the majority of shareholders, they would be able to block an amendment denying such rights.

ownership cannot be terminated by majority action. In that case, holders of a minority of shares in a closely held corporation brought a suit to compel the majority to recognize their right to vote their stock cumulatively, a method of voting which had been made mandatory by the adoption of Laws of 1933, ch. 185, § 28, p. 789. That act impliedly repealed a former law which provided for straight voting.

This court recognized that the state constitution had reserved to the legislature the right to amend or repeal laws relating to corporations, a provision which had been adopted in response to the holding of the United States Supreme Court in *Trustees of Dartmouth College v. Woodward,* 17 U.S. (4 Wheat.) 518, 4 L. Ed. 629 (1810), to the effect that the charter of a corporation is a contract which cannot be impaired by subsequent legislation. Justice Story, in his concurring opinion in that case, had observed that the legislature might reserve amendment authority in the original grant.

The Uniform Business Corporation Act of 1933 contained a savings clause, which provided that the act should not impair or affect any right "accruing, accrued or acquired" prior to its effective date. It also contained a provision making the act applicable to any existing corporation, except where otherwise expressly stated therein.

This court held that the straight method of voting shares was a right "accrued" or "acquired" within the meaning of the savings clause, because persons purchasing shares of stock relied upon the existing law (decreeing such voting method) when they purchased their shares. It declared that the right of a majority to use the straight voting method was a valuable property right. In addition to its obvious theoretical difficulties,[2] the problem with this line of reasoning is that, if a stock purchaser can rely on the continuation of existing corporation law, he is entitled to ignore

---

[2]For example, unless one person owns a majority of the shares of a corporation, no single owner can claim to be a member of the majority until the vote is counted. He has a "right" of the majority only when he votes with it; thus the

Const. art. 12, § 1, providing for the amendment of such laws. This court did not directly attack that issue but resolved it in a roundabout way by holding that the power to amend is exercisable only with respect to relations between the corporation and the State, and not with respect to contractual relations between the corporation and its shareholders, or among the shareholders.

The opinion was criticized by Professor Richard O. Kummert in an article *The Financial Provisions of the New Washington Business Corporation Act,* 41 Wash. L. Rev. 208, 209–12 (1966). As he said there, the majority of courts which have considered the problem have found the reservation of the amendment power to be a part of the shareholder's contract, with the result that the shareholder is deemed to have consented in advance to the State's exercise of a power to amend the charter or to authorize the corporation to do so. *See* 18 C.J.S. *Corporations* § 80 (1939); 18 Am. Jur. 2d *Corporations* § 92 (1965); 7A R. Eickhoff & J. Schneider, *Fletcher's Private Corporations,* ch. 43 (rev. ed. 1978).

██ These authorities and the cases cited therein, as well as the statutes of this state, make it manifest that flexibility is vital to the functioning and growth of corporations, as is the democratic concept of majority rule.[3] The case of *State ex rel. Swanson v. Perham, supra,* is out of harmony with those concepts, as well as with the applicable principles of law, both in its interpretation of the savings clause in the 1933 act and its evaluation of the import of Const.

---

"right," if it can vest at all vests only at the time of voting, and a prospective law changing the voting method would affect only voting rights which had not vested.

[3]The reasons why shareholder rights should be and are generally held to be amendable are well expressed in an article by G. Gibson, *How Fixed Are Class Shareholder Rights?*, 28 L. & Contemp. Prob. 283 (1958). The author is a member of the Virginia Bar and of the Committee on Corporate Laws of the American Bar Association. He is secretary of the section of Corporation, Banking, and Business Law of the American Bar Association.

art. 12, § 1. It should be and it is hereby overruled.[4]

While there are constitutional limitations upon the right to amend (*see Looker v. Maynard,* 179 U.S. 46, 45 L. Ed. 79, 21 S. Ct. 21 (1900); 7A R. Eickhoff & J. Schneider, *supra* at § 3681), the only objection raised here is that the amendment deprives the defendant and members of his class of a right which he claims was "vested." It is true that the preemptive right was available to them when new stocks were issued prior to the date of the amendment, but it was one which was, by agreement, subject to divestment. The amendment does not deprive them of any accrued right. It is prospective only in its application. Had the defendant contracted to purchase a specified number of shares prior to the amendment, a cognizable claim of vested rights would be before us. But that is not the case here.

The preemptive rights of shareholders in the plaintiff corporation, assuming such rights previously existed, were extinguishable through the amendatory process, according to the terms of the contract between the corporation and its shareholders. No protected right of the defendant and his class of minority shareholders was affected by that action.

Other courts which have considered the status of pre-emptive rights have reached the same conclusion. *See Gottlieb v. Heyden Chem. Corp.,* 33 Del. Ch. 82, 90 A.2d 660, *rehearing denied in part,* 91 A.2d 57 (1952);[5]

---

[4]*State ex rel. Swanson v. Perham,* 30 Wn.2d 368, 191 P.2d 689 (1948), was distinguished in *Golconda Mining Corp. v. Hecla Mining Co.,* 80 Wn.2d 372, 494 P.2d 1365 (1972), upon the ground that the Hecla Mining Co., by availing itself of other provisions of the Uniform Business Corporation Act, Laws of 1933, ch. 185, p. 770, was bound by all of its provisions, including those which provided for cumulative voting of stock.

[5]In *Gottlieb,* the court, noting that Delaware corporations were by statute given the power to change their structural characteristics and operational rules, within the bounds defined by law, for prospective application, said at page 95:

Any interpretation other than the one we feel bound to adopt would seriously impair the existing rights of the holders of a majority of the stock. They purchased their holdings under the assurance of the *Delaware General Corporation Law,* as well as of the terms of the particular contract of the State of

*McCallum v. Gray,* 273 Ore. 617, 542 P.2d 1025 (1975); *Mobile Press Register, Inc. v. McGowin,* 271 Ala. 414, 124 So. 2d 812 (1960); and *Milwaukee Sanitarium v. Lynch,* 238 Wis. 628, 300 N.W. 760 (1941). *Cf. Albrecht, Maguire & Co. v. General Plastics, Inc.,* 280 N.Y. 840, 21 N.E.2d 887 (1939).

The defendant has asked the court to award him his attorney fees on this appeal. The plaintiff voluntarily paid his fees at the trial level, apparently recognizing the fairness of such action, in light of the fact that the suit was brought to obtain an adjudication for the benefit of the corporation, and that the defendant was named as representative of the class of minority shareholders, none of whom, insofar as it appears, had a substantial financial interest to protect. It was in the interest of the corporation that the question be vigorously defended, in order to resolve questions concerning the legality of amendment of shareholders' rights. To achieve this end, a decision of this court was necessary, since a trial court judgment would be of little precedential value. If the defendant is forced to pay his attorney fees on appeal, the reasonableness of which has not been questioned, he will have conferred an essentially gratuitous benefit on the corporation.

█ While it is the general rule that attorney fees will be allowed only where provided by statute or contractual obligation, we have recognized limited exceptions to this rule, among them the rule that equity may allow reimbursement of attorney fees from a fund created or preserved by a litigant for the benefit of others as well as himself. This rule, we said in *Weiss v. Bruno,* 83 Wn.2d 911, 523 P.2d 915

---

Delaware with defendant, that the defendant corporation, in which they were about to buy an interest, would have the right from time to time to make amendments to its charter, at the direction and with the approval of the holders of a majority (or other specified percentage) of the stock, and would thus be in a position to adjust itself to the exigencies of changing business conditions. Similarly, the minority stockholders purchased their holdings with full notice of this same mutability. The majority, therefore, cannot now be frozen by the minority to a charter which the majority regards as out of date.

(1974), has been broadened to include situations where a litigant confers some other substantial benefit on an ascertainable class, such as corporate stockholders. The right to award attorney fees in limited, special situations, we said, springs from our inherent equity powers.

It is true that here the defendant was cast in the role of apparently opposing, rather than defending, the corporate interest. The law as it existed at the time of trial and upon this appeal was controlled by *State ex rel. Swanson v. Perham*, 30 Wn.2d 368, 191 P.2d 689 (1948). It is necessary to overrule the case for the plaintiff to prevail. Under the peculiar circumstances of the case, the very act of diligently opposing served to benefit the corporation, as it aided in clarifying the issue and brought into focus the need to abandon a legal doctrine which threatened the corporation's health and growth. The defendant performed his function as a person named by the plaintiff to represent the class of minority shareholders, in order to facilitate the declaratory judgment which it sought. Under these circumstances, the plaintiff has already recognized that it should pay the defendant's attorney fees at the trial level. To do complete equity, it must also pay them here. It is so ordered.

The judgment is affirmed.

UTTER, C.J., STAFFORD, WRIGHT, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., and HAMILTON, J. Pro Tem., concur.