In the

# United States Court of Appeals
## For the Seventh Circuit

No. 10-3509

ALBERT TROSTEL & SONS COMPANY,

*Plaintiff-Appellee*,

*v.*

EDWARD NOTZ and SANDRA K. NOTZ,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 07-C-0763—**C.N. Clevert, Jr.**, *Chief Judge*.

ARGUED SEPTEMBER 21, 2011—DECIDED MAY 10, 2012

Before EASTERBROOK, *Chief Judge*, and TINDER and HAMILTON, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.    Albert Trostel & Sons Company (Trostel) was founded in 1858. By 2007 the founder's relations still owned about 11% of its stock. Everett Smith Group, Ltd. (Smith), which owned the other 89%, decided to acquire the remaining shares via a freezeout merger. Voting was a formality; Smith's shares assured the merger's approval. Trostel became

Smith's wholly owned subsidiary. Edward Notz, one of Albert Trostel's great grandchildren, who owned 5.5% of the stock (some directly, some through a trust), rejected the proffered compensation of $11,900 per share—which came to about $7.7 million for his 5.5% interest. Notz contended that the shares were worth more than twice that much. The rest of the outside investors accepted the offer, however.

When investors dissent and reject the compensation offered in a merger or other major restructuring, a Wisconsin corporation must commence a judicial proceeding to have the stock appraised. Wis. Stat. §180.1330(1). Trostel filed in the United States District Court for the Eastern District of Wisconsin under the diversity jurisdiction, 28 U.S.C. §1332(a): Trostel is incorporated in Wisconsin and has its principal place of business there, both Edward Notz and the trustee (Sandra Notz) are citizens of Illinois, and the amount in controversy substantially exceeds $75,000. Notz nonetheless contended that the court lacks subject-matter jurisdiction. He insisted that appraisal proceedings must be conducted in state court. The district judge disagreed and denied Notz's motion to dismiss. 536 F. Supp. 2d 969 (E.D. Wis. 2008). After a trial, the judge concluded that the fair value of Trostel's stock on the merger date was $11,900 per share. 2010 U.S. Dist. LEXIS 108778 (E.D. Wis. Sept. 28, 2010). Notz's appeal contests both the jurisdictional ruling and the calculation of the stock's value.

Notz's jurisdictional argument rests on Wis. Stat. §180.1330(2), which provides that "[t]he corporation

shall bring [the appraisal action] in the circuit court for the county where its principal office . . . is located." Subsection (4) adds that "[t]he jurisdiction of the court in which the special proceeding is brought under sub. (2) is plenary and exclusive."

Wisconsin draws its corporate code from the Model Business Corporation Act, so this language or something similar appears in the statute books of 30 states. Several other states, including Delaware, have functionally identical provisions. *Truck Components Inc. v. Beatrice Co.*, 143 F.3d 1057, 1061–62 (7th Cir. 1998), holds that Delaware's version concerns venue rather than jurisdiction. See also *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 n.3 (2d Cir. 1982) (dictum understanding New York law the same way). Treating the statute as a claim by a state to oust the jurisdiction of the federal courts would simply render it unconstitutional, for no state may contract jurisdiction created by an Act of Congress. See, e.g., *M'Kim v. Voorhies*, 11 U.S. (7 Cranch) 279 (1812); *Railway Co. v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270 (1872). Cf. *Chicago v. International College of Surgeons*, 522 U.S. 156 (1997) (proceeding for review of a state agency's decision is removable notwithstanding the state's desire that its courts retain control). Under the Supremacy Clause, federal law prevails over conflicting state law. We said in *Truck Components* that it is best to read language such as Delaware's (and Wisconsin's) as allocating authority within its own judiciary. Why treat a state as claiming more power than it has? The commentary to the Model Business Corporation Act shows that the drafters set

out to create a "provision[] . . . relating to venue". ABA, *Model Business Corporation Act Annotated* §13.30 at 13–100 to 13–101 (4th ed. 2008 & 2011 rev.). There's no reason not to take the authors at their word.

Notz concedes all of this but maintains that it is irrelevant. He tells us that the suit belongs in state court not as a matter of statute, but as a matter of contract. Contractual forum-selection clauses are enforced even though they point to state courts, arbitral panels, or the courts of other nations. See, e.g., *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985); *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). Section 180.1330(2) is not part of a private contract between Trostel's founders and its investors—and Notz concedes that neither Trostel's charter nor its bylaws contains any language specifying where appraisal proceedings must be conducted—but Notz submits that all of Wisconsin's corporate law is part of all articles of incorporation and thus *becomes* contractual, even though no private person has assented.

Plenty of Wisconsin decisions contain statements along the lines of "[t]hese statutes are as effectively a part of the plaintiffs' certificates of stock and of the corporate charter as though printed therein." *Johnson v. Bradley Knitting Co.*, 228 Wis. 566, 574 (1938). See also *Hull v. Pfister & Vogel Leather Co.*, 235 Wis. 653, 666 (1940); *Milwaukee Sanitarium v. Swift*, 238 Wis. 628, 636 (1941); *Franzen v. Fred Rueping Leather Co.*, 255 Wis. 265, 272 (1949). But unless Wisconsin believes that corporate

statutes *are* contracts—and thus can't be amended after a corporation adopts its articles, for states may not "pass any . . . Law impairing the Obligation of Contracts" (Art. I §10 cl. 1)—these statements are just metaphors expressing the conclusion that state corporate law binds investors and managers alike.

The proposition that corporate law in force when a firm receives its charter becomes binding as a contract led to one of the most famous decisions in the Supreme Court's history: *Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518 (1819). The Court held that New Hampshire violated Dartmouth College's rights under the Constitution's Contract Clause when a statute enacted in 1816 changed provisions in the College's charter, which had been issued in 1769 by George III while New Hampshire was a crown colony. Justice Story's concurring opinion suggested that states could avoid similar outcomes for newly chartered corporations by reserving the right to change either general corporate law or a particular charter. States quickly took advantage of that opportunity, and the corporate-charter-as-contract doctrine faded into history.

Wisconsin included such a reservation in its first constitution, which was in force when it entered the Union. Wisconsin Constitution of 1848, Art. XII §1. The current Wisconsin Constitution has a similar provision in Art. XI §1: "Corporations without banking powers or privileges may be formed under general laws, but shall not be created by special act, except for municipal purposes. All general laws or special acts enacted under the provi-

sions of this section may be altered or repealed by the legislature at any time after their passage." The Supreme Court of Wisconsin has held that this clause ensures that the state can change the terms on which corporations operate. See, e.g., *Attorney General v. Chicago & Northwestern Ry.*, 35 Wis. 425, 574 (1874); *West Wisconsin Ry. v. Trempealeau County*, 35 Wis. 257, 270 (1874). The provisions of Wisconsin's corporate law therefore are legislative; they are not "contracts" as private law understands them, for they do not depend on any private party's consent and are outside the scope of the Contract Clause.

When the Supreme Court of the United States held in *Mitsubishi Motors* and similar cases that contractual forum-selection clauses must be enforced, it used "contractual" in the private-law sense—the word denotes obligations established by the unanimous and voluntary consent of the affected parties. That's not at all what the Supreme Court of Wisconsin means when using the metaphor that corporate law is read into a corporation's articles. There is nothing voluntary about Wis. Stat. 180.1330(2) and (4). These are rules established by the legislature, not decisions by private actors. We therefore conclude that Wisconsin, like Delaware (see *Truck Components*) has established a rule of venue applicable within its own judicial system and has not attempted to block corporations from using the diversity jurisdiction of §1332(a).

Notz does not contend that the district court's finding of fact that Trostel's shares were worth $11,900 apiece

is clearly erroneous. He does contend, however, that the judge made a legal error by excluding from the calculation a claim against Smith that Notz believes Trostel possessed. In 2004 Trostel had an opportunity to acquire the assets of Dickten & Masch Manufacturing Co., which made plastics. Trostel passed on that opportunity, but Smith (whose nominees controlled Trostel's board) did not; what's more, Smith then purchased Trostel's plastics subsidiary, Trostel SEG. Notz contends that these transactions misappropriated one of Trostel's corporate opportunities and diverted assets from Trostel to Smith.

Notz tried to litigate these claims in his own name, but both Trostel and Smith contended that the only way to pursue them is derivative litigation. Trostel appointed a special litigation committee of independent directors, which gave its blessing to the transactions and squelched any derivative suit. Then the Supreme Court of Wisconsin held that Notz's principal theory is indeed derivative in nature. *Notz v. Everett Smith Group, Inc.*, 316 Wis. 2d 640, 652–56 (2009). The court also held, however, that Notz could pursue two theories in his own name: first, that by causing Trostel to investigate the Dickten & Masch assets, Smith created the functional equivalent of a dividend to itself (the value of the information), a dividend that was withheld from the minority investors, *id*. at 656–60; second, that Trostel was being run in a way that oppressed minority shareholders and should be dissolved, *id.* at 660–67. Because the minority investors had been cashed out in 2007, the demand for dissolution was equivalent to a demand

for payment in excess of $11,900 (for on dissolution, as in a merger, all investors receive the value of their shares) and therefore duplicated the appraisal proceeding then pending in federal court. *Id.* at 675–78 (Roggensack, J., concurring). On remand, the Circuit Court of Milwaukee County concluded that the dissolution claim had no value to Notz and that the evidence did not establish the constructive-dividend claim. The Circuit Court entered judgment for all defendants. *Notz v. Everett Smith Group, Ltd.*, No. 06CV3068 (Sept. 7, 2011). Notz did not appeal.

His argument that the federal district court should have included elements of value growing out of the way the Dickten & Masch assets ended up in Smith's hands (without any dividend to the minority shareholders) amounts to an effort to relitigate these adverse decisions. Wisconsin entitles shareholders to the fair value of their shares on the date of the transaction that creates the right to dissent and appraisal. Wis. Stat. 180.1328. As of that date, Trostel's shares did not include any element of value attributable to the Dickten & Masch transaction—except for the payment Trostel received for Trostel SEG, and Notz received full credit for that. By the time the merger closed, the special litigation committee had decided not to pursue a claim on Trostel's behalf. Derivative litigation was a dead issue.

The special litigation committee concluded that a suit would not be in Trostel's interest—in other words, that the discounted value of any recovery was less than the litigation costs. Thus even though the law of preclusion

may not block Notz's effort to resuscitate a corporate-opportunities claim, the rationale behind the committee's decision implies that litigation would make Trostel worse off. Notz relies on a decision holding that "fair value" in an appraisal proceeding includes rights of recovery by a firm against its managers for wrongs they inflicted on the firm. See *HMO-W Inc. v. SSM Health Care System*, 234 Wis. 2d 707 (2000). This does not help, for the upshot of the derivative claim is that pursuing the members of Trostel's board would have had negative present value. And Wisconsin's courts have determined that there is nothing to Notz's independent claims. The district court thus toted up all of the elements of value that Trostel possessed when the merger closed.

AFFIRMED